UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TARA ALAMEDA, KAMECA BALAN, DEBBIE
HAMELL-PALMER, on their own behalves and
on behalf of a class of similarly situated
persons,

        Plaintiffs,   **COMPLAINT**

vs.

ASSOCIATION OF SOCIAL WORK BOARDS,
        Defendant.
------------------------------------------------------------x

  By and through their counsel, Michael H. Sussman, Esq. and on behalf of a nation-wide class of similarly situated persons, plaintiffs hereby allege that defendant has engaged in a pattern and practice which violated, and continues to violate, the rights of minority social workers, substantially restricting their ability to practice their chosen profession of social work, by and through the use of a racially biased and unvalidated examination which has created a significant barrier to entry not the profession.

**PARTIES**

  1. Plaintiff Tara Alameda resides in Queens, New York and is an adult of legal age.

  2. Plaintiff Alameda is Latina.

  3. Plaintiff Kameca Balan resides in Nassau County and is of legal age.

  4. Plaintiff Balan is of Haitian descent and dark-skinned.

1

5. Plaintiff Debbie Hamell-Palmer resides in Rome, New York and is of legal age.

6. Defendant, The Association of Social Work Boards [hereinafter "ASWB"], is a for-profit agency which develops, administers to individuals, including plaintiffs and all class members, and scores examination used by states to license candidates as Licensed Master Social Workers [LMSWs] and Licensed Clinical Social Workers [LCSWs]. Its principal headquarters is at 17126 Mountain Run Vista Ct., Culpeper, VA 22701.

7. Defendant ASWB conducts business within this judicial district in that it registers candidates for examinations and administers examinations within this judicial district, and profits therefrom.

**JURISDICTION**

8. In January 2023, plaintiffs filed a consolidated class charge with the EEOC alleging that defendant had engaged in unlawful racial discrimination. Exhibit 1.

9. The EEOC has dismissed the charge, providing each plaintiff with a right to sue letter. Exhibit 2 for right to sue letters.

10. Plaintiffs initiate this action within 90 days of their receipt of those right to sue letters.

11. As plaintiffs further contend that the discriminatory practices in which defendant has engaged, and continues to engage in, limits their right to contract

in a manner similar to that of white persons, this Court has jurisdiction to enforce 42 U.S.C. sec. 1981-a pursuant to 28 U.S.C. secs. 1331 and 1343(a) (3) & (4) and 42 U.S.C. sec. 1988.

12. This Honorable Court has venue over this matter because defendant conducts business within this judicial district, many class affected class members reside within this judicial district and Title VII affords plaintiffs the right to initiate this proceeding in any district court in the State in which defendant violated their rights.

**STATEMENT OF FACTS**

13. Plaintiff Alameda is a graduate of Beach Channel High School [1999], the College of New Rochelle [B.A. June 2010] and Touro College [M.S.W. June 2013].

14. During her Master's Program, plaintiff Alameda successfully completed 1,200 hours of supervised internship as a social worker., but she has been unable to pass the licensing examination defendant offered.

15. Plaintiff Alameda last took an examination developed and administered by the ASWB for LMSW on April 22, 2022. A score of 98 was required to pass; however, she received a score of 88 and failed the examination.

16. Plaintiff Alameda has taken an ASWB examination for the title of LMSW ten [10] times and intends to take it for the eleventh [11th] time in 2023.

3

17. In January 2014, plaintiff Alameda was employed as a school social worker and permitted to work under provisional certification she obtained in 2013.

18. However, since she could not pass the LMSW examination and thereby obtain her license, she could not receive permanent certification and her employer terminated her employment effective July 1, 2021.

19. By then, plaintiff Alameda had worked at twelve [12] high schools, had satisfactory ratings and earned tenure. Plaintiff Alameda sustained no discipline throughout her career as a school social worker.

20. By dint of her failure to pass the licensing examination, plaintiff Alameda suffered considerable income and retirement losses, was demoted, embarrassed, and emotionally stressed. She has been unable to do the work she loves and has a passion to perform. In addition, she remains responsible for school loans that did not allow her to forward and maintain her career.

21. Plaintiff Balan graduated from Yeshiva University's Wurzweiler School of Social Work [May 2015] and currently works at Sunrise Manor Rehabilitation as a Director of Social Services.

22. Plaintiff Balan has been so employed since February 2022.

23. Plaintiff Balan has taken and failed the LMSW Level examination five [5] times, scoring between 82-85.

24. Plaintiff Balan last sat for the ASWB examination for LMSW in August 2022 and scored 85, a failing score.

25. Her test scores have disallowed plaintiff Balan from seeking numerous employment opportunities and significantly depressed her income, both past, present, and future.

26. As a consequence of her failure to pass defendant's examinations, plaintiff Balan she can only obtain employment in a nursing facility; her passion is to become a school social worker or work with hospice patients, but only certain nursing facilities will hire her.

27. Plaintiff Hamell-Palmer has taken the LCSW test on several occasions after spending significant time and money preparing to do so.

28. Plaintiff Hamell-Palmer graduated from an accredited social work program and successfully discharged her duties and responsibilities in several social work positions.

29. However, like other members of the proposed class, her repeated failure to pass the LCSW exam has limited her professional opportunities and earning capacity.

30. In licensing candidates for the titles of LMSW and LCSW, the New York State Education Departments and like agencies throughout the United States rely upon examinations the ASWB develops, administers, and scores.

31. Otherwise qualified candidates, like the plaintiffs and the members of the sub-classes they seek to represent, cannot otherwise obtain this license except by passing such an examination.

32. To take the examination, a candidate must have attained a Master's Degree in Social Work from an accredited MSW program.

33. To take the LCSW test, a candidate must first pass the LMSW test and then log a prescribed number of supervised hours of clinical work.

34. The licensing examinations are not identical as ASWB has developed an array of test items which may appear on any given examination.

35. The ASWB has not validated the examinations developed for the purposes for which it promotes and uses them, that is, to measure whether a person will succeed as a LSMW or a LMCW, and its test results have long demonstrated significant disparities by race/ national origin, measured at least as far back as 2011, though not publicly revealed until August 2022.

36. African American and Latino/ Latina test-takers are far less likely to pass the examinations ASWB develops and administers than are Caucasian test takers for both the LMSW and LCSW titles.

37. After years of withholding such pass rate data despite specific requests, in August 2022, the ASWB finally released such data which confirmed the

significant racial disparity in outcomes for its non-validated examinations administered between 2011-21, inclusive.

38. For the clinical examinations administered between 2018-2021 inclusive in the United States, 84% of white test takers passed the exam the first time they took it; 45% of black test takers did and 65% of Hispanic test takers did.

39. In its August 2022 report, defendant also presented "eventual pass rate data" for the same period for the Clinical Licensing tests and that data showed the same pattern: 91% of whites eventually passed as compared with 57% of the black test takers and 76% of the Hispanic test takers.

40. The results for the Masters' examinations echo these with substantial and significant racial/ethnic disparities as follows: 88% of white first-time test takers passed as compared with 42% of blacks and 62% of Hispanics. Respondent reported "eventual pass rates" of 91%, 52%, and 71% for the three same demographic groups, respectively.

41. Thirty-seven states and territories issue Master's and Clinical licenses.

42. Eight states issue just Master's and Clinical licenses.

43. Two states issue a license for just the highest level of expertise.

44. Each state uses examinations developed by the defendant to qualify social work school graduates for these licenses.

45. Plaintiffs hereby allege that defendant ASWB has engaged and continues to engage in a discriminatory practice prohibited by Title VII of the Civil Rights Act of 1964 by developing, using, and purveying test scores from non-validated examinations which show significant racial disparities in results and predictably adversely affect the employment opportunities for plaintiffs and those they purport to represent.

46. Defendant has made contracts with each plaintiff and each other member of the putative nationwide class.

47. Defendant has directly accepted payments from each plaintiff and class member to enable her/them to take one or another of the offered licensed examinations.

48. In so contracting with plaintiffs, defendant has [and has had] a duty to offer examinations which were not racially biased and have been validated for the purpose[s] for which the examinations are offered.

49. On the contrary, defendant knowingly has long administered examinations which had substantial racially disparate impact and had not been validated and, for years, intentionally concealed data showing the disparate racial impact of its examinations from plaintiffs, members of the purported class and those who relied upon such examinations to license social workers.

50. In so proceeding, defendant violated 42 U.S.C. section 1981-a because it failed to contract with plaintiffs on the same basis as it did with white persons: it offered them knowingly discriminatory examinations understanding that a substantial greater number of minority group test-takers, engaged in said contractual relationships, would predictably fail, depriving them of the benefit of the contract, that is a score allowing them to become licensed social workers, with either a master's of clinical license.

51. As a result of the charged discriminatory practice, while profiting from this pattern of conduct, defendant has intentionally and similarly injured the plaintiffs and the other members of the putative classes, causing loss of employment and employment opportunities, wages, pension benefits, and emotional distress, humiliation, and embarrassment.

52. Plaintiffs are proper class representatives as [a] they are similarly situated to other putative class members, [b] the number of persons so affected is too numerous as to make practical the joinder of each adversely affected person in a single lawsuit, [c] each putative class member has been harmed by a common discriminatory practice - that is administration by defendant of non-validated examinations with significant racial impact; [d] the personal participation of each putative class member is not required to establish defendant's liability to class members; [e] the plaintiffs' claims are typical of those possessed by class members; [f] the plaintiffs have no interests in conflict with those of other

putative class members and [g] plaintiff class representatives are represented by experienced legal counsel who has represented like-situated plaintiffs in "testing" litigation and has other significant experience as a civil rights lawyer.

## CAUSES OF ACTION

53. Plaintiffs hereby incorporate paras. 1-52 as if fully restated herein.

54. By engaging in a discriminatory employment-related practice, as set forth herein, defendant has violated plaintiff's rights to non-discriminatory employment practices as guaranteed by Title VII of the Civil Rights Act of 1964, as amended.

55. By failing to contract with plaintiffs and other minority test-takers on the same basis as it has with Caucasian test-takers, defendant violated 42 U.S.C. section1981-a.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully request that this Honorable Court accept jurisdiction in this matter, certify this as a class action and recognize them as proper representatives of a nationwide class of African American and Hispanic persons who have taken and failed one of the licensing examinations administered by the ASWB since January 1, 2018; provide to the members of this class make whole relief, including a permanent injunction against defendant's administration of any of the examinations it has developed until it has demonstrated their validity

and that they are the least discriminatory means of qualifying persons for licensure as clinical and master social workers, and compensatory and punitive damages for class members for the injuries they have suffered, both pecuniary and otherwise, the award of attorneys' fees and costs pursuant to 42 U.S.C. section 1988 and any other and further relief required by law or equity.

Dated: July 17, 2023

_____
MICHAEL H. SUSSMAN, ESQ. [3497]

Counsel for Plaintiffs

SUSSMAN & GOLDMAN
PO BOX 1005
1 RAILROAD AVENUE, STE. 6
GOSHEN, NY 10924
(845)-294-3991
(845)-2941623 [fax]
sussmanl@sussman.law

Case 7:23-cv-06156-KMK   Document 1   Filed 07/17/23   Page 12 of 12