# SUSSMAN & GOLDMAN
~Attorneys at Law~

1 Railroad Avenue, Suite 3, P.O. Box 1005, Goshen, New York 10924

| Michael H. Sussman<br>Jonathan R. Goldman<br>Eli D. Siems | (845) 294-3991 [Tel]<br>(845) 294-1623 [Fax]<br>info@sussman.law | Christopher D. Watkins<br>Mary Jo Whateley<br>*Of Counsel* |
|---|---|---|
| | | Rasheed Hosein<br>*Paralegal* |
| | | Monica Ponce-Agredano<br>*Legal Assistant* |

September 26, 2023

Jennifer Ancona Semko, Esq.
Baker McKenzie.
815 Connecticut Avenue NW
Washington, DC 20006

  re:  *Almeda, et al. v. ASWB,* 23 cv 06156 (KMK)

Dear Ms. Semko,

  Thanks for yours dated September 20, 2023. I disagree with your interpretation of Title VII and with your interpretation of my complaint's allegations as pertinent to plaintiffs' 42 U.S.C. section 1981 claim. I am attaching and filing an Amended Complaint which more clearly sets forth the statutory bases for liability, adds state law claims and urge your client to recognize the profound damage it has done and continues to do at a time when our nation needs more social workers color performing critical roles in our communities.

  Title VII was intended to extirpate discrimination in employment and its authors understood that entities other than traditional "employers" could engage in such conduct. As is more clearly set forth in the annexed amended complaint, your client, ASWB, is such an "employer" and also falls within the language of 42 U.S.C. section 2000e-(c) which defines "employment agency" as "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person." Title VII makes it an "unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin." Functionally, this is precisely the role ASWB plays: it procures employees and regulates employment opportunities, knowingly and intentionally erecting a racially discriminatory barrier of entry into a myriad of employment opportunities in the social work profession for thousands of

members of protected minority groups. Your client is also an agent of the myriad of employers who employ social workers and my clients and other similarly situated cannot gain employment in their field because of the operation of the exam. Your client plays an essential gate-keeping role in the screening of employees, an essential and core function of employers. *Felder v. United States Tennis Ass'n*, 17-civ-5045, 2018 U.S. Dist. LEXIS 185508, *11, n. 4 (S.D.N.Y. Oct. 30, 2018).

In short, ASWB effectively procures employees for a host of employees by and through its licensing examinations and if these are, as alleged and easily demonstrated, discriminatory, its conduct falls within the scope of Title VII.

Your second argument is even more fallacious. You suggest that the complaint does not allege that ASWB violated 42 U.S.C. section 1981 because I fail to allege intentional racial discrimination. You are wrong as the Complaint alleges that your client acted intentionally and knowingly: after reciting the blatant disparate impact its exams have had, the Complaint, as initiated filed, alleges in paragraph 49 as follows: "defendant knowingly has long administered examinations which had substantially racially disparate impact and had not been validated and, for years, intentionally concealed data showing the disparate racial impact of its examinations from plaintiffs, members of the purported class and those who relied upon such examinations to license social workers." Paragraph 50 alleges that defendant knowingly offered minority group test takers non-validated examination which they understood would deprive these putative class members of the contractual benefit for which they engaged with your client. Paragraph 51 specifically alleges that your client so proceeded intentionally. Moreover, evidence of substantial racial impact is highly probative to a claim of intentional racial discrimination though, here, as explained above, the complaint does not merely allege disparate impact. Of course, by its nature, an element of a discriminatory testing claim is the significant racial disparity in test scores your company concealed for years and finally made known, under considerable public and professional pressure, in August 2022.

Accordingly, while I reject your claim that the Complaint fails to state claims under either of the federal provisions cited, I am providing you, and filing, an Amended Complaint which more fully addresses your concerns. Again, I urge you to discuss with your client how it can remedy the damage it has caused to so many otherwise qualified to practice this critical profession.

Yours sincerely,

Michael H. Sussman

cc: Honorable Kenneth Karas