UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TARA ALAMEDA, KAMECA BALAN, and
DEBBIE HAMELL-PALMER, on their own
behalves and on behalf of a class of similarly
situated persons,

               Plaintiffs,

          *- against -*

ASSOCIATION OF SOCIAL
WORK BOARDS,

               Defendant.

No. 7:23-cv-06156 (KMK)

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Jeffrey A. Sturgeon (*pro hac vice*)
Kelechi Okengwu
BAKER McKENZIE LLP
452 Fifth Avenue
New York, NY 10018
Tel: (212) 626-4339
Fax: (212) 310-1870
jeffrey.sturgeon@bakermckenzie.com
kelechi.okengwu@bakermckenzie.com

Jennifer Ancona Semko (*pro hac vice*)
James Gilmore (*pro hac vice*)
BAKER  McKENZIE LLP
815 Connecticut Ave., NW
Washington, DC 20006
Tel: (202) 835-4250
Fax: (202) 416-7055
jennifer.semko@bakermckenzie.com
james.gilmore@bakermckenzie.com

*Attorneys for Defendant, Association of Social Work Boards*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 3

ARGUMENT ....................................................................................................................... 5

    I.      Applicable Legal Standard ........................................................................... 5

    II.    Plaintiffs' Title VII Claim Fails Because ASWB Is Not Their Employer, Nor is it an "Employment Agency." ............................................................ 6

          A.     Plaintiffs Do Not Allege (and Could Not Possibly Allege) That ASWB is Their Employer. ....................................................... 6

          B.     Plaintiffs' Title VII Claim Fails Because ASWB Is Not an "Employment Agency." ....................................................... 7

    III.   Plaintiffs' NYSHRL Claim Fails Because ASWB Is Neither Their Employer Nor an "Employment Agency." ............................................. 9

    IV.   Plaintiffs' Section 1981 Claim Fails Because Plaintiffs Have Not Sufficiently Alleged (and Cannot Allege) Intentional Discrimination. ............... 11

    V.    The Complaint Should Be Dismissed With Prejudice Because Plaintiffs Have Already Had Two Opportunities to Amend, and Further Amendment Would Be Futile. ............................................................................ 15

CONCLUSION ................................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................5, 6

*Association of Mexican-American Educators v. California*,
231 F.3d 572 (9th Cir. 2000) ......................................................................................7

*Bailey v. City of New York*,
98-Civ-1812, 2003 WL 21031972 (S.D.N.Y. May 2, 2003)....................................14

*Bell Ad. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................5

*Bonaby v. New York City Taxi & Limousine Comm'n*,
No. 02 Civ. 5423, 2003 WL 21649453 (S.D.N.Y. July 14, 2003) ...........................8

*Brown v. City of Oneonta*,
221 F.3d 329 (2d Cir. 1999).......................................................................................11

*Brown v. Daikin Am. Inc.*,
756 F.3d 219 (2d Cir. 2014)........................................................................................9

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)......................................................................................15

*Clyburn v. Shields*,
33 Fed. App'x. 552 (2d Cir. 2002)............................................................................13

*Comcast Corp. v. National Association of African American-Owned Media*,
140 S. Ct. 1009 (2020)...............................................................................................12

*Covington v. Hamilton Twp. Bd. of Educ.*,
Civ. No. 08-3639, 2015 WL 3746338 (D.N.J. June 15, 2015).................................8

*Delgado v. McTighe*,
442 F. Supp. 725 (E.D. Pa. 1977) ..............................................................................8

*Electric Comm. Corp. v. Toshiba Am. Consumer Prods., Inc.*,
129 F.3d 240 (2d Cir. 1997)........................................................................................5

*Felder v. United States Tennis Ass'n.*,
27 F.4th 834 (2d Cir. 2022) ...............................................................................6, 11

*Gallagher v. Gallagher*,
   130 F. Supp. 2d 359 (N.D.N.Y. 2001)........................................................................9

*General Building Contractors Ass'n. Inc. v. Pennsylvania*,
   458 U.S. 375 (1982)..................................................................................................11

*Gulino v. New York State Educ. Dep't.*,
   460 F.3d 361 (2d Cir. 2006)....................................................................................6, 7

*Kellam v. Snelling Personnel Servs.*,
   866 F. Supp. 812 (D. Del. 1994).............................................................................10

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991).......................................................................................3

*Langhorne v. Port Authority*,
   No. 03-Civ-4610, 2005 WL 3018265 (S.D.N.Y. Nov. 10, 2005)...........................11

*Manley v. Texas Southern University*,
   107 F. Supp. 3d 712 (S.D. Tex. 2015) ....................................................................14

*Nat'l Org. for Women, New York Chapter v. Waterfront Comm'n of New York*
   *Harbor*, 468 F. Supp. 317 (S.D.N.Y. 1979)............................................................8

*Pani v. Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1998).........................................................................................3

*Popat v. Levy*,
   328 F. Supp. 3d 106 (W.D.N.Y. 2018) ......................................................................9

*Raymond v. City of New York*,
   317 F. Supp. 3d 746 (S.D.N.Y. 2018)................................................................12, 13

*Shipkevich v. Staten Island Univ. Hosp.*,
   No. 08-CV-1008, 2009 WL 1706590 (E.D.N.Y. June 16, 2009) .............................9

*Stoner v. Young Concert Artists, Inc.*,
   No. 11 Civ. 7279(LAP), 2012 WL 4471602 (S.D.N.Y. Sept. 25, 2012), *aff'd*
   *in relevant part*, 626 Fed. Appx. 293 (2d Cir. 2015) .............................................10

*TechnoMarine SA v. Giftports, Inc.*,
   758 F.3d 493 (2d Cir. 2014)......................................................................................15

*United States v. City of New York*,
   359 F.3d 83 (2d Cir. 2004)..........................................................................................6

*Woodard v. Virginia Bd. of Bar Examiners*,
   420 F. Supp. 211 (E.D. Va. 1976), *aff'd*, 598 F.2d 1345 (4th Cir. 1979)................7

iii

*Yusef v. Vassar College,*
　　35 F.3d 709 (2d Cir. 1994)..............................................................................12

**Statutes**

Civil Rights Act of 1866 ................................................................................. *passim*

Civil Rights Act of 1964 ................................................................................. *passim*

N.Y. Educ. L. § 7701 ..............................................................................................4

N.Y. Educ. L. § 7703 .........................................................................................4, 5

N.Y. Educ. L. § 7704 ..............................................................................................4

N.Y. Exec. L. § 292(2)..........................................................................................10

N.Y. Exec. L. § 296(1)(b)...............................................................................10, 11

**Other Authorities**

Fed. R. Civ. P. 15(a) .............................................................................................15

Defendant, the Association of Social Work Boards ("ASWB"), respectfully submits this Memorandum of Law in Support of its motion filed pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of plaintiffs' Tara Alameda, Kameca Balan and Debbie Hamell-Palmer, (collectively "Plaintiffs") First Amended Complaint in its entirety for failure to state a claim.

## PRELIMINARY STATEMENT

ASWB develops and administers two standardized examinations that are at issue in this case—the Licensed Master Social Workers exam and Licensed Clinical Social Workers exam (the "Exams")—which are used by the State of New York (and other jurisdictions) as one prerequisite for licensure in the social work profession.  *See* First Amended Complaint ("FAC") at ¶¶ 6, 47. Plaintiffs allege that the Exams are racially discriminatory because certain racial and ethnic minorities pass the Exams at a lower rate than white test takers, and Plaintiffs bring this putative class action on behalf of themselves and other African American and Hispanic test takers who have taken and failed one of the Exams.  Plaintiffs assert three causes of action: (1) employment discrimination pursuant to Title VII of the Civil Rights Act of 1964; (2) employment discrimination pursuant to the New York State Human Rights Law ("NYSHRL"); and (3) intentional race discrimination pursuant to Section 1981 of the 1866 Civil Rights Act.  (*Id.* ¶¶ 61-63.)  Because each of these claims is fundamentally flawed and cannot be salvaged through further amendment of Plaintiffs' complaint, this action should be dismissed in its entirety and with prejudice.

First, Plaintiffs cannot state a Title VII claim for employment discrimination because they have not alleged—and cannot possibly allege—facts sufficient to establish that ASWB is their employer or an "employment agency," as is required by the statute.  ASWB has never employed any of the Plaintiffs and satisfies none of the criteria the Second Circuit has long used to define an

employer-employee relationship.   It is equally ludicrous to suggest that ASWB could be considered an "employment agency."   ASWB develops and administers standardized examinations for its member state licensing boards—it does not procure employment or employees for Plaintiffs or anyone else.   Plaintiffs' contention that ASWB's indirect participation in a test taker's path to obtaining a license to practice social work through its administration of the Exams somehow equates to *procuring employment* for test takers is not supported by the plain language of Title VII, case law, or common sense.

For the same reasons, Plaintiffs' NYSHRL claim also fails.   Plaintiffs allege NYSHRL claims based on ASWB's purported "employment-related practice." (FAC ¶63).   But, as noted above, Plaintiffs do not even allege that ASWB is their employer, nor could they possibly do so. To the extent Plaintiffs intend to adopt a theory that ASWB is an "employment agency" under the NYSHRL, that is not a viable theory either because Plaintiffs allege no facts that could possibly support the conclusion that ASWB is engaged in the business of procuring employees or employment opportunities, as is required by the statute.   Moreover, even if ASWB were an employment agency, its conduct at issue does not fall within the statute's defined scope of actionable activities by employment agencies.

Finally, Plaintiffs' Section 1981 claim fails because Plaintiffs have not alleged (and cannot credibly allege) *intentional* discrimination by ASWB, as is required to maintain such a claim. "Disparate impact" theories are not viable under Section 1981, and that is precisely what Plaintiffs are trying to assert here.   Plaintiffs have attempted to overcome this fundamental flaw by amending their complaint to insert the adjective "intentional" throughout, but conclusory and unsupported assertions of intentional conduct are not sufficient to meet Plaintiffs' burden.   Plaintiffs allege disparate impact on minority test takers, but Section 1981 requires much more than that—Plaintiffs

must allege facts sufficient to show that ASWB acted deliberately and *because of* the resulting discriminatory effects upon minority groups, not merely *in spite of* those effects.  And as the U.S. Supreme Court made clear just a few years ago, Plaintiffs must show at the pleading stage and throughout this litigation that their race/ethnicity was a "but-for" cause of their injury—not even showing that race was a "motivating factor" will suffice.  Plaintiffs fall far short of meeting their burden.

For all of these reasons, Plaintiffs' amended complaint is not viable as a matter of law. Plaintiffs have already had two opportunities to amend their complaint, and it simply is not possible for them to credibly allege new facts sufficient to state a claim under Title VII, the NYSHRL, or Section 1981.  Thus, their amended complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

ASWB is a not-for-profit 501(c)(3)[1] organization whose members include the government agencies in the United States, Canada and certain overseas territories delegated with the authority to regulate the profession of social work in the interest of public protection.  *See*, *e.g.*, https://www.aswb.org/about-aswb/.[2]  Plaintiffs correctly note that one of ASWB's principal functions is to develop and administer the Exams (FAC ¶¶ 6, 47), which are developed, administered, scored and maintained in accordance with rigorous educational and assessment standards so as to serve as a valid measure of entry-level competence in the social work profession.

---

[1] Plaintiffs incorrectly assert that ASWB is a "for-profit" entity and an "agency."  (FAC. ¶ 6.) Although not directly relevant to the instant motion, ASWB is a not-for-profit organization exempt from taxation under Section 501(c)(3) as a charitable organization.  *See*, *e.g.*, https://projects.propublica.org/nonprofits/organizations/222414510.

[2] "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)."  *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir. 1998); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir. 1991).

A passing score on an Exam is one of several criteria used by state licensing agencies when evaluating applicants for licensure.  (FAC ¶¶ 34, 35.)

ASWB does not issue licenses to practice social work.  Rather, in the State of New York, applications for licensure in social work are evaluated and acted upon by the New York State Department of Education, Office of the Professions ("DOE").  (FAC ¶ 30; *see also* N.Y. Educ. Law § 7701, 7703.)  Passing one of ASWB's Exams is only one of several prerequisites to obtaining a license as a master social worker or clinical social worker in the state.  *See* N.Y. Educ. Law § 7704.  Aspiring licensees must also submit an application and pay a fee to the DOE, satisfy age and "good moral character" requirements, and complete a specified education at an approved program.  (*Id*.)  Individuals seeking a clinical social worker license must also have at least three years of full-time supervised post-graduate clinical social work experience in relevant professional fields.  (*Id*.)

Plaintiffs allege that, according to historical Exam pass rate data released by ASWB in August 2022, test takers who are African American or Hispanic are "far less likely" to pass the Exams than white test takers.  (*Id*. ¶¶ 38 – 43.)  Plaintiffs contend that ASWB previously hid this "substantial racially disparate impact" from public view (*id.* ¶ 56) and knowingly continued to offer Exams that are racially discriminatory and "non-validated." (*Id*. ¶¶ 52, 56.)

Plaintiff Alameda is Hispanic (*id.* ¶ 2), and Plaintiff Balan is of Haitian descent (*id.* ¶ 4).  Plaintiff Hamell-Palmer does not identify her race or ethnicity.  Plaintiffs allege that they each have taken and failed the Exams multiple times.  (*Id*. ¶¶ 16, 23, 27.)  As a result, they contend, they have been unable to obtain or to keep satisfactory employment as a social worker.  (*Id*. ¶¶ 17-21, 25-29.)  Plaintiffs do not contend that ASWB itself is, or has ever been, their employer—to the contrary, Plaintiffs identify various other entities that have employed them over the years.  (*Id.* ¶¶

17, 19, 21, 26.)

Plaintiffs also concede that actual licensure decisions are made independently by the DOE in New York.  (*Id.* ¶ 30.)  Yet, Plaintiffs assert in a conclusory manner that ASWB is an "agent" of the state licensing boards simply because ASWB administers the Exams, which Plaintiffs contend are "integral" to the states' licensing decisions.  (*Id.* ¶ 31.)  It is undisputed, however, that ASWB lacks the power to issue, renew, or take any adverse action related to a social worker's license under New York state law.  *See* N.Y. Educ. Law § 7703.

## ARGUMENT

### I.   Applicable Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Ad. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding whether a plaintiff has stated a facially plausible claim, the court may not "'assume that the [plaintiff] can prove facts that it has not alleged . . ..'"  *Electric Comm. Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 243 (2d Cir. 1997) (quoting *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)) (alteration in original)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557. Accordingly, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashforth v. Iqbal*, 556 U.S. at 679.

A complaint fails to state a claim "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).  Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## II.    **Plaintiffs' Title VII Claim Fails Because ASWB Is Not Their Employer, Nor is it an "Employment Agency."**

Title VII is an employment discrimination statute.  Yet Plaintiffs allege no facts establishing that ASWB has engaged in employment-related conduct—whether as Plaintiffs' employer or as a purported "employment agency."  Having failed to establish this fundamental element, Plaintiffs' Title VII claim must be dismissed.

### A.    **Plaintiffs Do Not Allege (and Could Not Possibly Allege) That ASWB is Their Employer.**

It is well-settled that "the existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. New York State Educ. Dep't*., 460 F.3d 361, 370 (2d Cir. 2006); *see also Felder v. United States Tennis Ass'n.*, 27 F.4th 834, 838 (2d Cir. 2022).  The Second Circuit has established a two-part test for determining whether such a relationship exists; it evaluates whether the plaintiff received compensation from the defendant and other factors related to the defendant's control over the plaintiff's work.  *See*, *e.g.*, *United States v. City of New York*, 359 F.3d 83, 91 (2d Cir. 2004).

Here, however, an extensive analysis is not necessary because Plaintiffs do not allege that they were ever hired by ASWB or that ASWB was ever their employer—nor could they credibly do so.  Although Plaintiffs summarily assert that ASWB has acted in a capacity that "bring[s] it within the definition of an employer for purposes of Title VII" (FAC ¶ 5), Plaintiffs do not allege

6

(nor could they) that they ever received any remuneration from ASWB in exchange for services—instead, they concede that their relationship with ASWB is a contractual one in which they paid ASWB a fee to take one of the Exams.  (FAC  53-54.)  Moreover, Plaintiffs affirmatively plead that other entities (not ASWB) employed them.  (*Id*. ¶¶ 17-19, 21-22, 26.)

Courts addressing comparable situations involving claims by test takers have consistently declined to find the existence of an employer-employee relationship.  *See*, *e.g.*, *Gulino*, 460 F.3d at 379 (explaining that organizations that set baseline qualifications for licensed public school teachers "[do] not exercise the workaday supervision necessary [for] an employment relationship"); *Association of Mexican-American Educators v. California*, 231 F.3d 572, 583 (9th Cir. 2000) (explaining that "Title VII does not apply when the only connection among the licensing agency, the plaintiff, and the universe of prospective employers is the agency's implementation of a general licensing examination"); *Woodard v. Virginia Bd. of Bar Examiners*, 420 F. Supp. 211, 212 (E.D. Va. 1976), *aff'd*, 598 F.2d 1345 (4th Cir. 1979) (holding that "Title VII does not apply to the bar examination by its own terms" in class action alleging that Virginia bar examination is racially discriminatory).  This Court should reach the same conclusion.

### B.    Plaintiffs' Title VII Claim Fails Because ASWB Is Not an "Employment Agency."

Recognizing their inability to establish that ASWB is their employer, Plaintiffs amended their complaint to allege that ASWB is liable under Title VII as an "employment agenc[y]."  (FAC ¶¶ 48-50.)  But Title VII defines an "employment agency" to mean "any person *regularly undertaking* with or without compensation *to procure employees for an employer or to procure for employees opportunities to work for an employer*."  42 U.S.C. § 2000e(c) (emphasis added).  The plain meaning of this definition makes clear that, "to be considered an employment agency" for the purpose of Title VII, an entity "must regularly undertake to procure opportunities for

employees to work for an employer." *See Covington v. Hamilton Twp. Bd. of Educ.*, Civ. No. 08-3639, 2015 WL 3746338, at *17 (D.N.J. June 15, 2015) (rejecting argument that Board of Education that assigned plaintiff basketball referee to area school district basketball games was an "employment agency"). Indeed, this Court and other courts across the country have consistently held that entities like ASWB involved in licensure examinations or the licensure process are not employment agencies. *See e.g., Bonaby v. New York City Taxi & Limousine Comm'n*, No. 02 Civ. 5423, 2003 WL 21649453, at *4 (S.D.N.Y. July 14, 2003) (holding that a taxi commission is not an employment agency because it does not procure employers or jobs for its licensees); *Nat'l Org. for Women, New York Chapter v. Waterfront Comm'n of New York Harbor*, 468 F. Supp. 317, 320 (S.D.N.Y. 1979) (licensing commission is not an employment agency for Title VII purposes because it does not undertake to obtain workers for employers or jobs for workers); *Delgado v. McTighe*, 442 F. Supp. 725, 730 (E.D. Pa. 1977) (state board of bar examiners is not employer or employment agency because there is no employer-employee relationship between examiners and test takers). Indeed, this Court has recognized that "because Congress had the power to include licensing within its definition of employer and did not do so, Congress did not intend for Title VII . . . to cover licensing." *Bonaby*, 2003 WL 21649453 at *4 (citations omitted).

Plaintiffs therefore allege no facts demonstrating that ASWB could possibly meet this definition of an "employment agency." Plaintiffs concede that ASWB develops and administers the examinations required to become a licensed social worker. (FAC ¶ 6.) Plaintiffs do not allege any facts supporting the conclusion that ASWB is in the business of procuring jobs for social workers, much less that ASWB had any role in facilitating Plaintiffs' relationship with their current and past employers. Indeed, Plaintiffs do not allege (nor could they) that ASWB is even aware of the identity of their employers.

Plaintiffs' contention that ASWB "by and through its examinations . . . procures for employees the opportunity to work for a myriad of employers" (FAC ¶ 48) attempts to stretch the meaning of "employment agency" beyond recognition.  Following Plaintiffs' logic, any third party involved in any way with an individual's educational and professional path to employment as a social worker would be deemed an "employment agency," which is a ludicrous result.  Because Plaintiffs have failed to allege *any* facts sufficient to establish ASWB is an "employment agency" within the meaning of Title VII, and because they cannot possibly do so, their claim fails as a matter of law and should be dismissed with prejudice.

**III.    Plaintiffs' NYSHRL Claim Fails Because ASWB Is Neither Their Employer Nor an "Employment Agency."**

When they amended their complaint, Plaintiffs added a new claim that ASWB violated Plaintiffs' right to non-discriminatory employment opportunities as guaranteed by the New York State Human Rights Law, N.Y. Exec. L. § 290, *et seq.* (the "NYSHRL") (FAC ¶ 63.)  But it is well established that the NYSHRL "mirrors" Title VII.  *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014);  *Popat v. Levy*, 328 F. Supp. 3d 106, 124 (W.D.N.Y. 2018).  Thus, like Plaintiffs' Title VII claim, the NYSHRL claim only survives if Plaintiffs allege facts sufficient to establish that ASWB is their employer or an "employment agency."  They have not done so.

As explained above, Plaintiffs do not even purport to allege an employer-employee relationship with ASWB.  Even if they had attempted to do so, the "analysis used to determine whether an entity is an individual's employer pursuant to the [NYSHRL] . . . is substantially the same as that used under Title VII."  *Shipkevich v. Staten Island Univ. Hosp.*, No. 08-CV-1008, 2009 WL 1706590, at *3 (E.D.N.Y. June 16, 2009).  "The most important consideration in this analysis is whether the alleged employer exercised control over the employee's conduct and the incidents of his employment."  *Gallagher v. Gallagher*, 130 F. Supp. 2d 359, 363 (N.D.N.Y. 2001).

Here, the complaint is absolutely devoid of any factual allegations regarding ASWB's control over the incidents of Plaintiffs' employment—or regarding remuneration, ASWB's control over hiring, or other indicia of an employment relationship. As if that were not already sufficiently dispositive, Plaintiffs identify *other entities* as their employers. Thus, Plaintiffs simply cannot base their NYSHRL claim on the theory that ASWB is their employer.

Plaintiffs' new theory that ASWB is an "employment agency" fares no better. The NYSHRL defines an "employment agency" as "any person undertaking to procure employees or opportunities to work." N.Y. Exec. L. § 292(2). Additionally, the statute's definition of discriminatory conduct by an employment agency is limited to actions "in receiving, classifying, disposing or otherwise acting upon applications for its services or in referring an applicant [] to an employer or employers." *Id.* § 296(1)(b). Thus, in the analogous context of a Title VII claim, courts have held that the scope of prohibited practices for employment agencies is more limited than those applicable to "employers." *See*, *e.g.*, *Kellam v. Snelling Personnel Servs.*, 866 F. Supp. 814-17 (D. Del. 1994) (analyzing Title VII).

Plaintiffs allege no facts supporting the conclusion that ASWB procures employees or job opportunities. And mere conclusory allegations that a defendant is an "employment agency" are "part and parcel of the sort of 'formulaic recitation of the elements of a cause of action [that] will not do.'" *Stoner v. Young Concert Artists, Inc.*, No. 11 Civ. 7279(LAP), 2012 WL 4471602, at *7 (S.D.N.Y. Sept. 25, 2012), *aff'd in relevant part*, 626 Fed. Appx. 293 (2d Cir. 2015) (quoting *Twombly*, 550 U.S. at 555) (dismissing discrimination claims against music competition program where only allegation was that program had booked concerts for competition winners). As with their Title VII claim, Plaintiffs' contention that ASWB's role in administering an exam used in the licensure process falls far short of meeting this definition.

Moreover, even if Plaintiffs could plausibly allege facts sufficient to establish that ASWB is an employment agency (an impossibility), the conduct at issue here (ASWB's offering of an allegedly discriminatory exam) is not within the scope of activities covered by the NYSHRL.  As noted above, the statute only prohibits an employment agency's actions in connection with applications for its employment services or in referring an applicant to an employer.  N.Y. Exec. L. § 296(1)(b); *see*, *e.g.*, *Langhorne v. Port Authority*, No. 03-Civ-4610, 2005 WL 3018265, at *6 (S.D.N.Y. Nov. 10, 2005) (dismissing NYSHRL claim against employment agency because plaintiff made no allegation of discrimination in connection with an application for the agency's services or the agency's referral to an employer).  ASWB's activities in connection with the development and administration of a standardized exam are not job placement or employment-referral services and, thus, fall outside the scope of the statute.  This Court, therefore, has multiple reasons to dismiss Plaintiffs' NYSHRL claim with prejudice.

## IV.  Plaintiffs' Section 1981 Claim Fails Because Plaintiffs Have Not Sufficiently Alleged (and Cannot Allege) Intentional Discrimination.

To state a claim for discrimination under Section 1981 (42 U.S.C.§ 1981), a plaintiff must allege facts demonstrating that: (1) each plaintiff is a member of a racial minority; (2) the defendant intentionally discriminated against each plaintiff on the basis of that plaintiff's race; and (3) such discrimination concerned one of the statute's enumerated activities, which includes the right to make and enforce contracts.  *Felder*, 27 F. 4th at 838; *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 1999).  In light of these requirements, it is well settled that Section 1981 "can be violated only by purposeful discrimination" and, therefore, cannot be based on disparate impact alone.  *General Building Contractors Ass'n. Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

Thus, to survive the instant motion, Plaintiffs "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference

of racially discriminatory intent" because "a showing of intentional discrimination is fundamental to the statement of a racial or ethnic origin discrimination claim under section 1981." *Raymond v. City of New York*, 317 F. Supp. 3d 746, 761 (S.D.N.Y. 2018); *see also Yusef v. Vassar College*, 35 F.3d 709, 714 (2d Cir. 1994) (affirming dismissal of Section 1981 claim as merely conclusory due, in part, to failure to connect alleged disparity in treatment to "racial bias"). Significantly, in March 2020, the United States Supreme Court made it clear that plaintiffs pursuing a Section 1981 claim bear the burden of showing at every stage in the proceedings—including at the pleading stage—that the plaintiff's race was a "but-for cause" of his or her injury and not merely a "motivating factor" in the defendant's actions. *Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009, 1014-15 (2020).

Here, Plaintiffs offer nothing to satisfy this "but for" test and the intentional discrimination requirement. Plaintiffs do not allege (nor could they possibly allege) that they were treated any differently than white or other test takers when contracting to take ASWB's Exams, were administered Exams that were different from those administered to white test takers, or that their Exams were graded any differently. Instead, Plaintiffs base their Section 1981 claim on the allegation that historic exam pass rate data show that certain racial and ethnic groups pass the Exams at a lower rate (FAC ¶¶ 38-43), but Plaintiffs' complaint is devoid of any factual allegations that would support the notion that ASWB *purposefully* intended to achieve that disparate outcome due to *racial bias*, as is required to state a Section 1981 claim.

Plaintiffs have attempted to overcome this fatal flaw by amending their complaint to allege that ASWB knowingly delivered exams with disparate pass rates and purposefully withheld evidence of this disparate impact until 2022. (FAC ¶¶ 37, 39, 52, 56). But this is still not close to being enough. First, the assertion of statistical data showing disparate impact in exam results,

standing alone, is insufficient to state a claim for intentional discrimination. *Raymond*, 317 F.Supp. 3d at 762 (citation omitted) (dismissing complaint that relied significantly on statistical data, such as data showing disproportionate number of white police officers in command positions, as compared to minority officers). Additionally, actionable discriminatory intent requires "more than intent as volition or intent as awareness of consequences; it involves a decision maker's undertaking a course of action *because of, not merely in spite of*, the action's adverse effects upon an identifiable group." *Raymond*, 317 F. Supp. 3d at 761 (emphasis added). Plaintiffs' allegations do not meet this high standard.

The Second Circuit and other courts considering very similar allegations in analogous cases have consistently rejected claims of intentional discrimination at the motion to dismiss stage. For example, in *Clyburn v. Shields*, 33 Fed. App'x. 552, 555 (2d Cir. 2002), the Second Circuit upheld the dismissal of Section 1981 (and other) claims brought by two African-American men who alleged that the defendant law school admissions officers' reliance on Law School Admissions Test ("LSAT") scores as a criterion for their admission was discriminatory because the defendants were aware that the exam disadvantages African Americans. The plaintiffs further alleged that the company that develops and administers the LSAT had participated in this intentional discrimination, but the Second Circuit affirmed the dismissal of those claims as well. *Id*. In rejecting the claims, the court noted that the complaint did not allege any facts "that would substantiate a theory that [the defendants] . . . intentionally used or administered the LSAT . . . for the purpose of discriminating against African-American law school applicants." *Id*. The court noted that (as is the case here) "[a]t best, the plaintiffs allege that [the defendants] were aware that the [exam] disproportionately affects such applicants yet continued to use it," finding this to be insufficient to state a claim. *Id*. The court even went so far as to hold that *even if* the complaint

13

could be read to allege that the defendants use the LSAT "because of" its negative effect on African-American applicants, that "bare allegation, without any facts alleged in support, is insufficient to state a claim for intentional discrimination."  *Id*. (citations omitted).

A federal court in Texas reached an identical conclusion a decade later in *Manley v. Texas Southern University*, 107 F. Supp. 3d 712 (S.D. Tex. 2015).  The plaintiff in that case, an African-American man, sued the law school to which he was repeatedly denied admission, alleging in relevant part that the school discriminated against him by relying on the LSAT, which he contended had a "historical discriminatory effect against minority students."  *Id*. at 720-21.  The court dismissed his Section 1981 claim, noting that his "complaint alleges only disparate impact, not disparate treatment," which is not actionable under Section 1981.  *Id*. at 721 (citing *Clyburn*, 33 Fed. App'x at 555-56).  The court also observed that the plaintiff had not alleged any facts that, if proven, would support the inference that the law school's use of the LSAT was "adopted for a discriminatory purpose."  *Id.* at 722 (citations omitted).  *See also*, *Bailey v. City of New York*, 98-Civ-1812, 2003 WL 21031972 at, *7-10 (S.D.N.Y. May 2, 2003) (upholding well-settled principle that disparate impact claims are not cognizable under Section 1981 and further holding that statistical data showing disparate outcomes is not sufficient to establish purposeful discrimination).

Here, Plaintiffs have not alleged any facts that plausibly support the conclusion that ASWB acted *deliberately* in order to achieve a disparate outcome in its exam results because of its *racial bias*.  Additionally, Plaintiffs' recitation of exam pass rate data does not make the other plausible, nondiscriminatory explanations for these disparate outcomes "very unlikely."  As a result, Plaintiffs Section 1981 claim should be dismissed.  Because Plaintiffs have already had the opportunity to amend their complaint, and because Plaintiffs cannot credibly allege any facts that

would support a conclusion that ASWB has intentionally discriminated against them, the dismissal should be with prejudice.

**V.      The Complaint Should Be Dismissed With Prejudice Because Plaintiffs Have Already Had Two Opportunities to Amend, and Further Amendment Would Be Futile.**

Plaintiffs have already had two opportunities to amend their complaint.  In accordance with this Court's Individual Rules of Practice, in September 2023 ASWB notified Plaintiffs by letter of its specific arguments and relevant caselaw supporting ASWB's position as to why the complaint fails as a matter of law.  (ECF No. 15.)  In response, Plaintiffs filed their First Amended Complaint, as discussed herein.  (ECF No. 22.)  The complaint remained woefully deficient, however, and ASWB once again summarized its intended arguments in support of a motion to dismiss in a second pre-filing letter to Plaintiffs and the Court in October 2023.  (ECF No. 26.)  Rather than taking the opportunity to amend their complaint for a second time, Plaintiffs stood on the First Amended Complaint (ECF No. 27), implicitly conceding that they did not possess any additional factual allegations that might bolster their claims.  This Court authorized ASWB to move forward with its motion to dismiss.  (ECF No. 29.)

Having now had two opportunities to address the fundamental flaws in their complaint via an amendment, Plaintiffs need not be given a third bite at the apple.  *See*, *e.g.*, *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014) (upholding District Court's denial of leave to amend after plaintiff had already received one opportunity to amend).  Although Federal Rule of Civil Procedure 15(a) instructs that leave to amend should be "freely given when justice so requires," this Court has discretion to deny leave for good reason, including futility.  *Id*. at 505.  Thus, a "plaintiff need not be given leave to amend if [plaintiff] fails to specify how amendment would cure the pleading deficiencies in [plaintiff's] complaint."  *Id*.; *see also See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 n.71 (2d Cir. 2014) (affirming

denial of leave to amend where plaintiffs had already amended once, should have foreseen the defendants' arguments regarding the deficiencies in the complaint, and "identified no additional facts or legal theories . . . they might assert if given leave to amend").

Plaintiffs here have already had ample opportunity to amend their complaint, declined to do so a second time even after being made fully aware of ASWB's arguments regarding the flaws in their claims, and cannot identify any new factual allegations or legal theories that could salvage their claims.  For these reasons, the First Amended Complaint should be dismissed with prejudice and without leave to further amend.

## **CONCLUSION**

Plaintiffs have failed to allege any facts demonstrating that ASWB is their employer or an employment agency, which defeats both their Title VII and NYSHRL claims.  Plaintiffs have also failed to sufficiently allege intentional discrimination, which is fatal to their Section 1981 claim. Accordingly, Plaintiffs' First Amended Complaint does not state a claim upon which relief may be granted.  Moreover, Plaintiffs have already had an opportunity to amend their complaint, and further amendments would be futile.  Thus, ASWB respectfully requests that this Court dismiss this action, in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:  December 8, 2023                     Respectfully submitted,

/s/ Jennifer Ancona Semko
Jennifer Ancona Semko (*pro hac vice*)
James Gilmore (*pro hac vice*)
BAKER McKENZIE LLP
815 Connecticut Ave., NW
Washington, DC 20006
Tel: (202) 835-4250
Fax: (202) 416-7055
jennifer.semko@bakermckenzie.com
james.gilmore@bakermckenzie.com

Jeffrey A. Sturgeon (*pro hac vice*)
Kelechi Okengwu
BAKER McKENZIE LLP
452 Fifth Avenue
New York, NY 10018
Tel: (212) 626-4339
Fax: (212) 310-1870
jeffrey.sturgeon@bakermckenzie.com
kelechi.okengwu@bakermckenzie.com

*Attorneys for Defendant*
*Association of Social Work Boards*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of December 2023, a true and correct copy of the foregoing was served on all counsel of record using the Court's electronic filing system.

*/s/ Jennifer Ancona Semko*