UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TARA ALAMEDA, KAMECA BALAN, and DEBBIE HAMELL-PALMER, on their own behalves and on behalf of a class of similarly situated persons,<br><br>                    Plaintiffs,<br><br>        - *against* -<br><br>ASSOCIATION OF SOCIAL WORK BOARDS,<br><br>                    Defendant. | No. 7:23-cv-06156 (KMK) |

**REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Jeffrey A. Sturgeon (*pro hac vice*)
Kelechi Okengwu
BAKER McKENZIE LLP
452 Fifth Avenue
New York, NY 10018
Tel: (212) 626-4339
Fax: (212) 310-1870
jeffrey.sturgeon@bakermckenzie.com
kelechi.okengwu@bakermckenzie.com

Jennifer Ancona Semko (*pro hac vice*)
James Gilmore (*pro hac vice*)
BAKER McKENZIE LLP
815 Connecticut Ave., NW
Washington, DC 20006
Tel: (202) 835-4250
Fax: (202) 416-7055
jennifer.semko@bakermckenzie.com
james.gilmore@bakermckenzie.com

*Attorneys for Defendant, Association of Social Work Boards*

# **TABLE OF CONTENTS**

I. The Second Circuit Has Rejected Plaintiffs' "Third-Party Interference" Theory of Title VII Liability, Which They Could Never Satisfy, In Any Event.................................. 1

II. Plaintiffs Cannot Amend Their Complaint to Add a NYSHRL "Aiding and Abetting" Claim Via Their Opposition Brief, and Such a Claim Fails, In Any Event. ....................................................................................................................... 4

III. Plaintiffs Ignore the Required "But-For Causation" Pleading Standard, Which is Fatal to Their Section 1981 Claim. ...................................................................... 6

IV. Plaintiffs Have Not Demonstrated a Basis for a Third Opportunity to Amend................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Association of Mexican–American Educators v. California*,
   231 F.3d 572 (9th Cir. 2000) (en banc) ...................................................................................3

*Belyea v. City of Glen Cove*,
   No. 20-CV-5675, 2023 WL 3586559 (E.D.N.Y. Aug, 22, 2022) ............................................5

*Bonaffini v. City Univ. of N.Y.*,
   No. 20-cv-5118, 2021 WL 2895688 (E.D.N.Y. July 9, 2021).................................................5

*Bueno v. Eurostars Hotel Co.*,
   No. 21-cv-535, 2022 WL 95026 (S.D.N.Y Jan. 7, 2022) .....................................................5, 6

*Cancel v. Home Depot*,
   488 Fed. App'x. 520 (2d Cir. 2012)........................................................................................8

*Clyburn v. Shields*,
   33 Fed. App'x. 552 (2d Cir. 2002)..........................................................................................8

*Comcast Corp. v. National Association of African American-Owned Media*,
   140 S. Ct. 1009 (2020)..................................................................................................... passim

*Conklin v. County of Suffolk*,
   859 F. Supp. 2d 415 (E.D.N.Y. 2012) ....................................................................................5

*F5 Capital v. Pappas*,
   856 F.3d 61 (2d Cir. 2017).....................................................................................................10

*Farmer v. Shake Shack Enters., LLC*,
   473 F. Supp. 3d 309 (S.D.N.Y. 2020)......................................................................................4

*Godwin v. Sirva, Inc.*,
   291 F. Supp. 3d 245 (E.D.N.Y. 2018) ....................................................................................4

*Gulino v. New York State Educ. Dep't.*,
   460 F.3d 361 (2d Cir. 2006)............................................................................................1, 2, 3

*Hesse v. Godiva Chocolatier, Inc.*,
   463 F. Supp. 3d 453 (S.D.N.Y. 2020)......................................................................................8

*Kiryas Joel Alliance v. Village of Kiryas Joel*,
   No. 11-CV-3982, 2011 WL 5995075 (S.D.N.Y. Nov. 28, 2011)............................................4

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015)..................................................................................................6

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
   6 F. 4th 293 (2d Cir. 2021) ...................................................................................................7

*Lopez v. Massachusetts*,
   588 F.3d 69 (1st Cir. 2009)...................................................................................................2

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015)................................................................................................10

*National Org. for Women v. State Div. of Human Rights*,
   34 N.Y.2d 416 (1974) ...........................................................................................................4

*Personnel Adm'r of Mass. v. Feeney*,
   442 U.S. 256 (1979)..........................................................................................................8, 9

*Raymond v. City of New York*,
   317 F. Supp. 3d 746 (S.D.N.Y. 2018)...................................................................................8

*Richardson v. City of New York*,
   No. 17-cv-9447, 2018 WL 4682224 (S.D.N.Y. Sept. 28, 2018) .....................................6, 9, 10

*Sanchez v. L'Oreal USA, Inc.*,
   No. 21-CV-3229, 2022 WL 1556402 (S.D.N.Y. May 17, 2022) ..............................................6

*Shah v. Deaconess Hosp.*,
   355 F.3d 496 (6th Cir. 2004) ................................................................................................2

*Sibley Memorial Hospital v. Wilson*,
   488 F.2d 1338 (D.C. Cir. 1973)......................................................................................, 2, 3

*Smith v. Castaways Family Diner*,
   453 F.3d 971 (7th Cir. 2006) ................................................................................................2

*Spirt v. Teachers Ins. & Annuit Ass'n*,
   691 F.2d 1054 (2d Cir. 1982)................................................................................................2

*State Farm Mut. Auto Ins. Co. v. Fayda*,
   No. 14-cv-9792, 2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015).................................................9

*Vega v. Hempstead Unio Free School District*,
   801 F.3d 72 (2d Cir. 2015)....................................................................................................6

## Statutes

New York State Human Rights Law ........................................................................... *passim*

In a desperate effort to save their groundless lawsuit, Plaintiffs urge this court to adopt a "third-party interference" theory of Title VII liability that the Second Circuit has rejected, assert an aiding-and-abetting claim under the New York State Human Rights Law ("NYSHRL") that is neither mentioned in their complaint nor supported by the facts or the law, and ignore U.S. Supreme Court precedent imposing a Section 1981 pleading standard that Plaintiffs cannot satisfy. The First Amended Complaint should be dismissed with prejudice because further amendment would be futile.

**I.    The Second Circuit Has Rejected Plaintiffs' "Third-Party Interference" Theory of Title VII Liability, Which They Could Never Satisfy, In Any Event.**

The third-party interference theory of Title VII liability originated in the District of Columbia in *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338, 1340-41 (D.C. Cir. 1973). As Plaintiffs concede, the Second Circuit has criticized *Sibley* and has expressly declined to recognize that theory. *Gulino v. New York State Educ. Dep't.*, 460 F.3d 361 (2d Cir. 2006). Plaintiffs urge this Court to disregard the Second Circuit's reasoning and apply *Sibley* anyway.

In *Gulino*, the Second Circuit pointed out that "this Circuit has never adopted a broad reading of the *Sibley* interference test" and declined to apply the *Sibley* court's "expansive approach to interpreting the straightforward language of the statute." 460 F.3d at 374. The court reasoned that the *Sibley* court's theory of liability "contravenes the plain language of Title VII and strays from basic tenets of statutory interpretation." *Id.*

First, and fundamentally, the *Gulino* court noted its disagreement with *Sibley*'s "expansive definition of 'employer'" because a "natural reading of [Title VII] suggests that the 'individual' it references is a potential, current, or past employee of the employer." *Id*. at 374 (citations omitted). Plaintiffs here adopt a contrary view and argue that, because Title VII does not specify that an employer is only liable for actions taken against *its own employees*, it must follow that liability attaches whenever an employer discriminates against *any* individual. (Pl. Opp. at 5-6.) The Second Circuit has already rejected this expansive interpretation.

1

Such an interpretation "ignores the very language that Congress employed." 460 F.3d at 375. Congress specifically identified labor unions and employment agencies as the only additional parties that are potentially liable under Title VII. *See* 42 U.S.C. § 2000e (b)-(d) and § 2000e–2(a)-(c). Noting that "Congress obviously considered a range of potentially liable parties apart from traditional common-law employers, and in so doing, decided that only these two additional groups would be included," the court concluded that "all other parties with a similar 'nexus' to a plaintiff's employment are excluded from the Title VII liability scheme." 460 F.3d at 375 (citations omitted).

Although the *Gulino* court also identified potential Constitutional concerns triggered by applying the *Sibley* rationale to the state defendants, it concluded that it need not reach that issue because it had determined that Title VII should not apply. 460 F.3d at 376. It ended its analysis by noting that there was "no justification for embracing *Sibley*'s reading of Title VII and its use of the interference test." *Id*. Other Circuits have also declined to adopt *Sibley*'s expansive view. *See*, *e.g.*, *Lopez v. Massachusetts,* 588 F.3d 69, 89 (1st Cir. 2009) ("The Supreme Court has not recognized any other possible means of interpreting either the term 'employee' or the term 'employer' under Title VII and has rejected broader readings . . . Most other circuits have also repudiated the interference theory as an impermissible deviation from the common law agency approach") (citing *Gulino,* 460 F.3d at 373-76); *Smith v. Castaways Family Diner,* 453 F.3d 971, 975-76 (7th Cir. 2006); *Shah v. Deaconess Hosp.,* 355 F.3d 496, 499-500 (6th Cir. 2004). Despite Plaintiffs' protest, the *Gulino* court's reasoning was sound, and this Court is obligated to follow it.[1]

Even if the third-party interference theory of liability were available, it simply would not apply to the facts alleged here. In *Sibley*, the defendant hospital directly coordinated the hiring of the plaintiff by hospital patients through the hospital's registry and referral system. 488 F.2d at 1339.

---

[1] Nothing in the Second Circuit's decision in *Spirt v. Teachers Ins. & Annuit Ass'n*, 691 F.2d 1054 (2d Cir. 1982) undermines the *Gulino* holding. As the *Gulino* court noted, the *Spirt* holding was narrow in scope and a number of intervening U.S. Supreme Court and Second Circuit rulings showed that "a broad application of the interference test is plainly inconsistent with traditional principles of agency law." *Id*. at 377-378.

2

The *Sibley* court's decision to extend Title VII liability to the hospital was based on this arrangement, including the hospital's control of the premises upon which the plaintiff's services were to be rendered and its ability to block plaintiff's access to patients attempting to hire him. *Id*. at 1342. In that scenario, the hospital was alleged to have "intruded itself between the patient and appellee." *Id*. No such "intrusion" is alleged here—indeed, Plaintiffs do not allege (nor could they) that ASWB had any interactions with their employers or prospective employers whatsoever.

The instant case is equally distinguishable from other factual scenarios in which third-party interference liability has been considered. As the *Gulino* court recognized, where the employer controls its own day-to-day operations and makes its own employment decisions, the *Sibley* test is not triggered. 460 F.3d at 376. This is true even when a defendant state agency set baseline requirements for local schools, such as curriculum standards, graduation requirements, and minimum licensure requirements for teachers. *Id*. at 374. Similarly, the Second Circuit rejected *Sibley* liability (applied for the sake of argument) in *Salamon v. Our Lady of Victory Hospital*, finding it insufficient that the defendant hospital allegedly interfered with the plaintiff physician's access to patients and employment opportunities at other hospitals. 514 F.3d 217, 232-33 (2d Cir. 2008). In contrast, in *Association of Mexican–American Educators v. California,* 231 F.3d 572, 580 (9th Cir. 2000) (en banc), upon which Plaintiffs rely, the State of California was held to be subject to third-party Title VII liability because it had a direct role in the day-to-day operations of the public school employers.

Here, Plaintiffs do not allege (nor can they) that ASWB has any involvement in the day-to-day operations of any prior, current or prospective employers. No court has ever held a licensure exam developer like ASWB to be so intertwined with the employment decisions of the unknown employers who may one day hire (or decline to hire) its test takers that *Sibley* liability is triggered. Thus, even if the Second Circuit recognized *Sibley* liability, it would not apply here.

3

II. **Plaintiffs Cannot Amend Their Complaint to Add a NYSHRL "Aiding and Abetting" Claim Via Their Opposition Brief, and Such a Claim Fails, In Any Event.**

Plaintiffs concede that their NYSHRL claim fails because they have not alleged (and cannot allege) facts sufficient to establish that ASWB is their employer or an "employment agency." Instead, Plaintiffs furtively attempt to add a completely new claim that ASWB "aided and abetted" employment discrimination. This new claim should be dismissed for a number of reasons.

*First*, it is improper for Plaintiffs to amend their complaint in their opposition brief. *See*, *e.g.*, *Kiryas Joel Alliance v. Village of Kiryas Joel*, No. 11-CV-3982, 2011 WL 5995075, *15 (S.D.N.Y. Nov. 28, 2011) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)).

*Second*, even if Plaintiffs could add a new aiding-and-abetting claim via their brief, such a claim would fail. It is well settled that before a defendant can be found liable as an aider and abettor under the NYSHRL, "a plaintiff must first establish the existence of a primary violation of the NYSHRL by an employer or principal." *Godwin v. Sirva, Inc.*, 291 F. Supp. 3d 245, 254 (E.D.N.Y. 2018) (collecting cases); *see also Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 338 (S.D.N.Y. 2020) (dismissing aiding-and-abetting claim where complaint did not state a primary claim for discrimination against any defendant).[2]

Plaintiffs have not alleged a valid primary claim for discrimination. Instead, Plaintiffs improperly attempt to convert their disparate impact allegations regarding the Exams into intentional acts of discrimination by Plaintiffs' employers, asserting that "when an otherwise qualified candidate is unable to gain employment in her chosen field because of her failure to obtain necessary licensure, and the ability to gain such licensure is denied due to race, the denial of employment itself is thus also based on race." (Pl. Opp. at 16.) But the complaint is devoid of any allegation that any specific

---

[2] Plaintiffs cite *National Org. for Women v. State Div. of Human Rights*, 34 N.Y.2d 416 (1974), but, as explained in *Godwin*, the *NOW* court *assumed* the existence of a predicate violation and therefore "did not find it necessary to 'consider the issue of whether, separate from the newspaper company, any employer or prospective employer was liable for primary discrimination under the Human Rights Law.'" *Godwin*, 291 F. Supp. 3d at 255. Thus, "*NOW* does not support the conclusion that a primary violation is unnecessary for aider and abettor liability." *Id*. at 255.

4

employer engaged in race discrimination—indeed, Plaintiffs concede that employers are prohibited from hiring unlicensed social workers (FAC ¶ 50) and at least one Plaintiff has not even sought employment opportunities that require a license. (*Id.* ¶ 25.) Plaintiffs likewise raise a conclusory claim that "ASWB's practice separately aids and abets the State of New York as a licensing agency" (Pl. Opp. at 17), but they assert no factual allegations of discriminatory actions by the state licensing authorities. Undoubtedly, Plaintiffs' failure to even *allege* facts sufficient to demonstrate any principal discriminatory acts forecloses their aiding-and-abetting claim. *See*, *e.g.*, *Bueno v. Eurostars Hotel Co.*, No. 21-cv-535, 2022 WL 95026, at *11 (S.D.N.Y Jan. 7, 2022) ("Without a predicate act of employment discrimination under the NYSHRL . . . there can be no aiding-and-abetting claim."); *Belyea v. City of Glen Cove*, No. 20-CV-5675, 2023 WL 3586559, at *17 (E.D.N.Y. Aug, 22, 2022) (dismissing claim because plaintiff did not "first establish the existence of a primary violation of the NYSHRL by an employer or principal.") (citations omitted).

*Third*, even if Plaintiffs could somehow allege a predicate act of race discrimination by a particular employer or licensing board, their complaint falls far short of alleging the kind of direct, purposeful participation that an aiding-and-abetting claim requires. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 437 (E.D.N.Y. 2012) (dismissing aiding and abetting claims where defendant had no supervisory role and no control over the terms of the plaintiff's employment); *Bonaffini v. City Univ. of N.Y.*, No. 20-cv-5118, 2021 WL 2895688, at *5 (E.D.N.Y. July 9, 2021) (dismissing claims and denying amendment as futile where defendant university provost "had nothing to do with the [school's] denial of plaintiff's request to teach classes online"); *cf. Bueno*, 2022 WL 95026, at *9 (finding that defendant CEO's role in plaintiff's termination as the primary decisionmaker "is the kind of direct, purposeful participation that aiding and abetting liability requires.") Plaintiffs do not allege that ASWB was even aware of Plaintiff's past or prospective employers, much less that ASWB had "direct, purposeful participation" in any employment decisions. And Plaintiffs cannot dispute that ASWB does not require anyone to take its Exams, does not make state licensure decisions, and

has no involvement in an employer's hiring decisions.

*Fourth and finally*, to the extent Plaintiffs contend that the racially disparate pass rates of ASWB's exams alone are sufficient to establish aiding and abetting liability under the NYSHRL, this would stretch the reach of an aiding-and-abetting claim beyond recognition. No court has adopted such a theory, and it is well settled that a defendant cannot aid and abet its own conduct. *Bueno*, 2022 WL 95026, at *9; *Sanchez v. L'Oreal USA, Inc.*, No. 21-CV-3229, 2022 WL 1556402, at *6-7 (S.D.N.Y. May 17, 2022).

### III. Plaintiffs Ignore the Required "But-For Causation" Pleading Standard, Which is Fatal to Their Section 1981 Claim.

The U.S. Supreme Court has held that a Section 1981 plaintiff must allege facts sufficient to show that race was a "but-for cause" of the defendant's actions and not merely a "motivating factor." *Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009, 1014-15 (2020). Plaintiffs *completely ignore* this "but for" requirement and attempt to convince this Court that a different pleading standard should apply. In so doing, Plaintiffs rely heavily on an unreported District Court ruling that predates *Comcast*, arguing that their complaint "need only carry the minimal burden of providing at least minimal support for the proposition that the [defendant] was motivated by discriminatory intent." *See* Pl. Opp. at 18 (citing *Richardson v. City of New York*, No. 17-cv-9447, 2018 WL 4682224, at *6 (S.D.N.Y. Sept. 28, 2018)).[3] That is simply not the law.

The Supreme Court made clear in *Comcast* that a Section 1981 plaintiff "bears the burden of showing that race was a but-for cause of its injury" at every stage in the proceedings, including at the pleading stage. *Comcast*, 140 S.Ct. at 1014-15. In so ruling, the Supreme Court expressly *rejected* the very pleading standard that Plaintiffs articulate, resolving a Circuit split by reversing the Ninth Circuit's holding that a plaintiff need only "plead facts plausibly showing that race played 'some role'

---

[3] Notably, the Second Circuit rulings that the *Richardson* court cited as support for this proposition are Title VII employment discrimination cases that applied the less stringent "motivating factor" pleading standard. *See Vega v. Hempstead Unio Free School District*, 801 F.3d 72, 85-86 (2d Cir. 2015) and *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015). *Comcast* soundly rejected the applicability of this pleading standard to Section 1981 cases.

6

in the defendant's decisionmaking process." *Comcast*, 140 S. Ct. at 1013-14; *see also id.* at 1018 ("nowhere in its amendments to §1981 did Congress so much as whisper about motivating factors"). The Supreme Court also soundly rejected the suggestion (advanced by Plaintiffs here) that this high causation standard should be lighter at the pleading stage. *Id.* at 1016 ("Nor did anything in [the Supreme Court's prior Section 1981 cases] even gesture toward the possibility that this rule of causation sometimes might be overlooked or modified in the early stages of a case."); *see also Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F. 4th 293, 303 (2d Cir. 2021) ("The Supreme Court has clarified recently that the but-for causation standard for discrimination claims applies not only at trial but at the pleading stage as well.") When the *correct* pleading standard is applied, Plaintiffs' Section 1981 claim unquestionably fails. Plaintiffs allege no facts (nor could they) that could plausibly support the conclusion that, *but for Plaintiffs' race*, ASWB would not have caused Plaintiffs to suffer the injury they claim. Stated differently, Plaintiffs' race did not *cause* ASWB to contract with them differently, which is precisely what Plaintiffs must (but will never be able to) allege. Plaintiffs received the same exam as everyone else, and their tests were scored the same way. ASWB did not refuse to contract with Plaintiffs because of their race or treat them differently in the contracting process because of their race. Thus, there is no "but for" causation.

Nor can Plaintiffs recast their disparate impact theory as intentional discrimination. In attempting to do so, Plaintiffs ignore the fundamental purpose of Section 1981, which is "'to eradicate blatant deprivations of civil rights,' such as where 'a private offeror refuse[d] to extend to [an African-American], . . . because he is [an African-American], the same opportunity to enter into contracts as he extends to white offerees." *Comcast*, 140 S. Ct. at 1016 (citations omitted). Many of the same reasons Plaintiffs cannot plead "but for" causation also preclude them from ever pleading intentional discrimination. Plaintiffs do not allege that they were treated any differently than white test takers when contracting to take the ASWB's Exams, that they were administered different Exams, or that their Exams were graded differently. They instead contend that the outcome of that contract (the

7

outcome of the Exams) has a disproportionately negative effect (a failing score) for certain racial and ethnic groups. This kind of disparate impact theory, without a showing of intentionality, has never been cognizable under Section 1981. *See*, *e.g.*, *Cancel v. Home Depot*, 488 Fed. App'x. 520, 521 (2d Cir. 2012) (citations omitted) (dismissing claim that was "entirely predicated on a disparate-impact theory, which is not a valid basis for a §1981 claim" and finding amendment to be futile); *Clyburn v. Shields*, 33 Fed. App'x. 552, 555 (2d Cir. 2002).

Plaintiffs attempt to conjure other factual allegations to show intentional discrimination by arguing that ASWB's discriminatory intent can be inferred from its decision to continue offering the Exams with purported knowledge of the disproportionate failure rates for minority groups. *See* Pl. Opp. at 18.[4] But it is well-settled that a claim of intentional discrimination demands more than mere awareness of adverse consequences for minority groups. The Supreme Court has long held that the accused discriminatory decisionmaker must have taken "a particular course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979); *see also Raymond v. City of New York*, 317 F. Supp. 3d 746, 761 (S.D.N.Y. 2018). This is entirely consistent with the Supreme Court's endorsement of the "but-for" causation standard in *Comcast*, in which the Court recognized that its precedent "spoke of §1981 using language—because of—often associated with but-for causation." *Comcast*, 140 S.Ct. at 1016. Recognizing its use of the same "because of" language in cases related to "neighboring" Civil Rights Act Section 1982, the Supreme Court remarked that "[i]f a §1982 plaintiff must show the defendant's challenged conduct was 'because of' race, it is unclear how we might demand less from a §1981 plaintiff." *Id.* at 1017. Thus, Plaintiffs' Section 1981 claim must be dismissed unless

---

[4] Plaintiffs argue that ASWB knew of this disparate impact "over more than a decade" (Pl. Opp. at 18), but the pass rate report upon which Plaintiffs rely (FAC ¶¶ 39-43) makes clear that it is based on data that ASWB did not begin to gather until after November 9, 2021. *See* https://www.bbs.ca.gov/pdf/agen_notice/2022/20221103_04_item_xxi.pdf. *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) ("Judicial notice may be taken of documents that are integral to the complaint, such that the complaint relies heavily upon the documents' terms and effect.").

8

they offer facts sufficient to show that ASWB acted "because of" Plaintiffs' race—Plaintiffs do not (and cannot) do so.[5]

Plaintiffs do not cite any case in which bare statistical data regarding exam pass rates was deemed sufficient to show a defendant's intent to discriminate. Indeed, in the very case on which Plaintiffs rely the most, *Richardson*, the District Court *dismissed* the plaintiffs' claim of compensation-related discrimination because it was based solely on statistical evidence. 2018 WL 4682224 at *8 ("the statistical evidence Plaintiffs adduce to support their compensation-based claims in inadequate to bring the inference of an agency-wide pattern or practice of pay discrimination 'from possible to plausible'"). Although the *Richardson* court (while also applying an incorrect and more generous pleading standard) allowed the plaintiffs' hiring-related discrimination claim to survive, this was because the plaintiffs offered not just "statistics alone" but also (1) the analysis and adverse ruling of a prior federal court against the same defendants, which ruling was derived from "a 'voluminous' summary judgment record" and "extensive discovery" and (2) "anecdotal evidence" related to the experiences of specific individuals who were highly qualified but repeatedly denied job positions that went to less-qualified white applicants. *Id*. at *7-9. No such allegations exist here.[6]

Plaintiffs' reliance on *Burgis v. New York City Dep't of Sanitation* (Pl. Opp. at 20), in which a Section 1981 putative class action was *dismissed in its entirety*, actually undermines their argument. 798 F.3d 63 (2d Cir. 2015). Although the Second Circuit in that case acknowledged that there may be some circumstances in which statistical evidence alone might suffice, the court noted that such statistics "must not only be statistically significant in the mathematical sense, but they must also be

---

[5] Plaintiffs wrongly suggest that a footnote in the *Feeney* decision should be interpreted to mean that this pleading requirement can be disregarded. *See* Pl. Opp. at 19-20 (discussing fn. 25 of *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256 (1979)). The cited footnote merely explained that obvious and inevitable discriminatory effects of a particular action can be one consideration when determining whether a defendant acted "because of" the plaintiff's race. Regardless, *Comcast* reflects the current state of the law.

[6] Plaintiffs argue that New York law requires this Court to deem ASWB to have a "guilty conscience" and to infer discriminatory intent because ASWB did not release pass rate data sooner (Pl. Opp. at 18-19), relying on *State Farm Mut. Auto Ins. Co. v. Fayda*, No. 14-cv-9792, 2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015). But *Fayda* involved a motion to compel discovery in a RICO action and has absolutely nothing to do with Section 1981 pleading standards.

9

of a level that makes other plausible non-discriminatory explanations very unlikely." *Id*. at 69 (citations omitted). The *Burgis* plaintiffs offered hiring data showing very significant disparities between the percentage of white employees promoted to a supervisory position, as compared to Black employees (*e.g.*, 91% versus 4%). *Id*. Despite these stark numbers, the court found that these statistics were insufficient "without providing any detail as to the number of individuals at each level, the qualifications of individuals in the applicant pool and of those hired for each position, or the number of openings at each level." *Id*. The court concluded that "for all that one can tell . . . it is equally possible that plaintiffs have not been promoted for valid, non-discriminatory reasons." *Id*. at 69. The same logic applies here,[7] although it bears repeating that AWSB is not the entity that decides whether the Exams are required for licensure, or whether a particular job or position requires licensure. ASWB is much further removed from any employment-related decision.

### IV.    Plaintiffs Have Not Demonstrated a Basis for a Third Opportunity to Amend.

Plaintiffs have already had two opportunities to amended their complaint (ECF Nos. 22, 27). Plaintiffs' own cases make it clear that "leave may be denied where amendment would be futile." *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Plaintiffs offer no explanation as to how they would cure the deficiencies in the complaint. *F5 Capital v. Pappas*, 856 F.3d 61, 90 (2d Cir. 2017); *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 190. For this reason and all of the reasons set forth herein, the First Amended Complaint should be dismissed with prejudice.

---

[7] Plaintiffs also cite *United States v. City of New York*, but that decision predates both *Burgis* and *Comcast*. 717 F.3d 72 (2d Cir. 2013). Moreover, that court found that the defendants' failure to validate their exams or to develop a new exam were *not* sufficient to support a reasonable inference of intentional discrimination. *Id*. at 94. Although the court noted that the fact finder should determine whether the officials intentionally discriminated by continuing to use the challenged exams, the court noted that "[w]ere the decision ours to make, we would not draw such an inference." *Id*. at 94.

Dated: January 23, 2023

Respectfully submitted,

/s/ Jennifer Ancona Semko
Jennifer Ancona Semko (*pro hac vice*)
James Gilmore (*pro hac vice*)
BAKER McKENZIE LLP
815 Connecticut Ave., NW
Washington, DC 20006
Tel: (202) 835-4250
Fax: (202) 416-7055
jennifer.semko@bakermckenzie.com
james.gilmore@bakermckenzie.com

Jeffrey A. Sturgeon (*pro hac vice*)
Kelechi Okengwu
BAKER McKENZIE LLP
452 Fifth Avenue
New York, NY 10018
Tel: (212) 626-4339
Fax: (212) 310-1870
jeffrey.sturgeon@bakermckenzie.com
kelechi.okengwu@bakermckenzie.com

*Attorneys for Defendant*
*Association of Social Work Boards*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of January 2024, a true and correct copy of the foregoing was served on all counsel of record using the Court's electronic filing system.

/s/ Jennifer Ancona Semko
Jennifer Ancona Semko