UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TARA ALAMEDA, et al.,

                              Plaintiffs,

        v.

ASSOCIATION OF SOCIAL WORK
BOARDS,

                              Defendant.

No. 23-CV-6156 (KMK)

OPINION AND ORDER

Appearances:

Jonathan Robert Goldman, Esq.
Sussman and Goldman
Goshen, NY
*Counsel for Plaintiffs*

Michael Howard Sussman, Esq.
Sussman & Watkins
Goshen, NY
*Counsel for Plaintiffs*

Jennifer Semko, Esq.
James Gilmore, Esq.
Baker & McKenzie LLP
Washington, DC
*Counsel for Defendant*

Jeffrey A. Sturgeon, Esq.
Kelechi Emem Okengwu, Esq.
Baker & McKenzie LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Tara Alameda, Kameca Balan, and Debbie Hamell-Palmer, (collectively "Plaintiffs")

bring this Action, on their own behalf and on behalf of a class of similarly situated persons,

against the Association of Social Work Boards ("ASWB" or "Defendant"), alleging claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and Section 1981 of the 1866 Civil Rights Act ("Section 1981"). (*See generally* First Am. Compl. ("FAC") (Dkt. No. 22-1).) Before the Court is Defendant's Motion to Dismiss (the "Motion") Plaintiffs' FAC in its entirety. (*See* Not. of Mot. (Dkt. No. 30).) For the following reasons, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiffs' FAC, all of which are assumed to be true for the purpose of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

ASWB is a not-for-profit 501(c)(3) organization whose members include the government agencies in the United States, Canada and certain overseas territories delegated with the authority to regulate the profession of social work in the interest of public protection. *See*, *e.g.*, https://www.aswb.org/about-aswb/. One of ASWB's principal functions is to develop, administer, and score exams used by states to license candidates as Licensed Master Social Workers and Licensed Clinical Social Worker. (*See* FAC ¶¶ 6, 47.) ASWB does not issue licenses to practice social work. Rather, in the State of New York, applications for licensure in social work are evaluated and acted upon by the New York State Department of Education ("DOE"). (*See id.* at ¶ 30; *see also* N.Y. Educ. Law §§ 7701, 7703.) A passing score on an exam is one of several criteria used by state licensing agencies when evaluating applicants for licensure. (*See* FAC ¶¶ 34, 35.)

Plaintiffs allege that, according to historical exam pass rate data released by ASWB in August 2022, test takers who are African American or Hispanic are "far less likely" to pass the exams than white test takers. (*See id*. at ¶¶ 38–43.) Plaintiffs contend that ASWB previously hid this "substantial racially disparate impact" from public view, (*id.* at ¶ 56) and knowingly continued to offer exams that are racially discriminatory and "non-validated," (*id*. at ¶¶ 52, 56).

Plaintiff Alameda is Hispanic, (*id.* at ¶ 2), and Plaintiff Balan is of Haitian descent, (*id*. ¶ 4). Plaintiff Hamell-Palmer does not identify her race or ethnicity. (*See id*. at ¶ 5.) Plaintiffs allege that they each have taken and failed the exams multiple times. (*See id*. ¶¶ 16, 23, 27.) As a result, they contend, none of them has been unable to obtain or to keep satisfactory employment as a social worker. (*See id*. at ¶¶ 17–21, 25-29.)

B.  Procedural History

On July 17, 2023, Plaintiffs commenced the instant Action by filing their initial Complaint, (*see* Compl. (Dkt. No. 1).), and on September 26, 2023, Plaintiffs filed their FAC, (*see* FAC). On October 10, 2023, Defendant filed a pre-motion letter regarding a potential motion to dismiss Plaintiffs' FAC, (*see* Dkt. No. 26), which Plaintiffs responded to on October 13, 2023, (*see* Dkt. No. 27). On November 7, 2023, the Court held a pre-motion conference, during which it sent a briefing schedule. (*See* Dkt. (Minute Entry Dated 11/7/2023).) Defendant filed the instant Motion to Dismiss on December 8, 2023. (*See* Not. of Mot.; Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem.") (Dkt. No. 30-1).) Following an extension, Plaintiffs filed their Response on January 5, 2024. (*See* Pls.' Mem. of Law in Opp. to Def.'s Mot. to Dismiss ("Pls.' Opp.") (Dkt. No. 34).) Defendant filed its Reply on January 23, 2024. (*See* Def.'s Reply Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Reply Mem.") (Dkt. No. 35.).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at

678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

Plaintiffs allege that the social work licensing exams administered by the ASWB are racially discriminatory.  (*See e.g.,* FAC ¶ 52.)  Accordingly, Plaintiffs bring this putative class action on behalf of themselves and other African American and Hispanic test takers who have taken and failed one of the exams, asserting three causes of action: (1) employment discrimination pursuant to Title VII; (2) employment discrimination pursuant the NYSHRL; and (3) intentional race discrimination pursuant to Section 1981 of the 1866 Civil Rights Act. (*See id.* at ¶¶ 61–63.)  The Court addresses each claim in turn.

1.  Title VII Claim

Under Title VII, it is unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). "Consequently, the existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. N.Y. State Educ. Dep't,* 460 F.3d 361, 370 (2d Cir. 2006).

Here, Plaintiffs have not alleged, nor could they allege, that ASWB employed them. Specifically, Plaintiffs have not pled that they have ever hired by ASWB or have received any payment or benefits from ASWB for work performed for Defendant. *Lee v. Yang*, No. 21-CV-7934, 2023 WL 419193, at *2 (S.D.N.Y. Jan. 26, 2023) (noting that to demonstrate an employment relationship, in cases where it is not clear that such a relationship exists, "[f]irst, a plaintiff must show that he or she was hired by the putative employer, which in turn requires a showing that he or she received remuneration in some form for his or her work." (alteration adopted) (internal quotation marks and citation omitted)). To the contrary, Plaintiffs admit that ASWB is just the organization that develops, administers, and scores exams used by states to license candidates as Licensed Master Social Workers and Licensed Clinical Social Workers. (*See* FAC ¶¶ 6, 47.) Furthermore, Plaintiffs explicitly specify the entities for which they have worked and had employment relationships with, none of which includes ASWB. (*See id.* at ¶¶ 17–19, 21–22, 26 (noting the organizations for which Plaintiffs have worked).) As such, the Court concludes, based on Plaintiffs' own allegations, that Plaintiffs do not have an employer-employee relationship with ASWB, such as to allow them to mount a plausible Title VII claim. *See Sunnen v. New York*, No. 10-CV-372, 2010 WL 3912728, at *1 (S.D.N.Y. Sept. 10, 2010)

(dismissing plaintiff's Title VII claim against NYSDOH for revoking his license on the basis that

he did not contend he was employed by the agency); *Mikhail v. Bentley*, No. 96-CV-7987, 1997

WL 225799, at *2 (S.D.N.Y. May 6, 1997) (dismissing Title VII claim against medical licensing

body for denying plaintiff's application for a medical license because defendant was not

plaintiff's employer).

Recognizing this glaring weakness, Plaintiffs argue that this Court should adopt a third-

party interference theory in analyzing the employer-employee relationship.  (*See* Pls.' Opp. 5–

13.)  The interference liability theory first arose over five decades agon in *Sibley Memorial*

*Hospital v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973).  *See Gulino*, 460 F.3d at 373.  Under this

theory, liability under Title VII may extend "not only [to] employers in the traditional sense, but

also [to] those who interfere with an individual's access to employment opportunities."  *Id.* at

374.  This theory has not received a warm welcome in the Second Circuit.  *See Yacklon v. E.*

*Irondequoit Cent. Sch. Dist.*, 733 F. Supp. 2d 385, 389 (W.D.N.Y. 2010) (noting that the Second

Circuit has "sharply limited the scope of that rule," and collecting cases).  Although, in *Spirt v.*

*Teachers Insurance & Annuity Association*, the Second Circuit found "it is generally recognized

that the term employer, as it is used in Title VII, is sufficiently broad to encompass any party

who significantly affects access of any individual to employment opportunities, regardless of

whether that party may technically be described as an employer of an aggrieved individual as

that term has generally been defined at common law," 691 F.2d 1054, 1063 (2d Cir. 1982)

(internal quotation marks and citations omitted), *vacated on other grounds sub nom. Long Island*

*Univ. v. Spirt*, 463 U.S. 1223 (1983), the Second Circuit has since declined to "adopt[] a broad

reading of the *Sibley* interference test," *Gulino*, 460 F.3d at 374, 377 (noting that that *Spirt*

"enunciated a narrow rule based upon a unique factual posture," that "where an employer has

7

delegated one of its core duties to a third party . . . that third party can incur liability under Title VII"); *see also Jansson v. Stamford Health, Inc.*, No. 16-CV-260, 2017 WL 1289824, at *23 (D. Conn. Apr. 5, 2017) (noting that "the Second Circuit has recognized a carefully limited 'interference' theory under Title VII:  'where an employer has delegated one of its core duties to a third party' (e.g., administration of a retirement plan)" (italics omitted) (quoting *Gulino*, 460 F.3d at 377)); *Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454, 2013 WL 3487032, at *13 (S.D.N.Y. July 9, 2013) (finding interference liability theory inapplicable when plaintiff did not allege interference with her employment opportunities, nor allege a delegation of core employer responsibilities), *adopted in relevant part*, 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013).

In *Gulino*, the employees of a school district sued a state agency under Title VII, alleging that rights of African American and Latino teachers were violated through the imposition of a requirement that they pass a test to receive or retain a teaching license.  460 F.3d at 364.  There, the court held that the plaintiffs had no Title VII claim against the state agency for administering allegedly discriminatory tests because plaintiffs' direct employer had not delegated any core employer responsibilities to the agency that administer the test.  *See id.* at 378.  Similarly, here, the Court concludes that the Plaintiffs do not have a tenable Title VII claim against the ASWB, which administers the allegedly discriminatory licensing exams, because Plaintiffs, even after amending their Complaint, have not pled that their employers have delegated any core responsibilities to ASWB.  *Id.*; *see also Popat v. Levy*, No. 15-CV-1052, 2024 WL 3652947, at *17 (W.D.N.Y. Aug. 5, 2024) (declining to find an employment relationship between plaintiff and defendant under the interference theory, where a core employment responsibility had not been delegated); *Bonaby v. New York City Taxi & Limousine Comm'n.*, No. 02-CV-5423, 2003 WL 21649453, at *4 (S.D.N.Y. July 14, 2003) ("[A]lthough the granting or withholding of a

8

license affects the employment prospects of a would-be licensee, in most cases this has not made the licensing body an employer who can be liable under Title VII . . . .").[1]

Finally, Plaintiffs' contention, added in the Amended Complaint, that ASWB is liable under Title VII as an "employment agenc[y]," (*see* FAC ¶¶ 48–50), is disingenuous and wholly misplaced. As a general matter, "Title VII makes it unlawful for an employment agency to 'fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin.'" *Scaglione v. Chappaqua Cent. Sch. Dist.*, 209 F. Supp. 2d 311, 315 (S.D.N.Y. 2002) (quoting 42 U.S.C. § 2000e–2(b)). "Title VII defines an employment agency as 'any person regularly undertaking with or without compensation to procure for employees opportunities to work for an employer and includes an agent of such a person.'" *Infantolino v. Joint Indus. Bd. of the Elec. Indus.*, No. 03-CV-4134, 2006 WL 3065591, at *4 (E.D.N.Y. Sept. 25, 2006) (quoting 42 U.S.C. § 2000e-2(b)), *report and*

---

[1] The Court notes that Plaintiffs, in support of their third-party interference argument, cite to *Association of Mexican–American Educators v. California*, 231 F.3d 572, 580 (9th Cir. 2000) (en banc), an out of circuit case, which concluded that defendants, who were not plaintiffs' direct employers, could be considered employers for Title VII purposes. (*See* Pls.' Opp. 8–10). *Association of Mexican–American Educators*, however, is distinguishable. In that case, minority educators brought a class action lawsuit against the State of California and the California Commission on Teacher Credentialing, challenging the use of the California Basic Educational Skills Test ("CBEST") as a requirement for certification to teach and for other employment in California public schools as violation of, inter alia, Title VII. *See id.* at 577. The Ninth Circuit concluded that their "conclusion [was] dictated by the peculiar degree of control that the State of California exercise[d] over local school districts." *Id.* Further, "[t]he state's involvement [was] not limited to general legislative oversight but, rather, affect[ed] the day-to-day operations of local public schools." *Id.* As explained above, that is not the case here. Other than administering a licensing exam, Plaintiffs do not plead that ASWB maintains any involvement or control over the daily operations of Plaintiffs' employment, or any other peculiar degree of control. As such, Defendant cannot be categorized as an employer for Title VII purposes in the manner that defendants were in *Association of Mexican–American Educators*.

*recommendation adopted* (E.D.N.Y. Oct. 26, 2006). Plaintiffs have not pled that ASWB satisfies the definition of an employment agency. As explained above, Plaintiffs merely allege that ASWB develops, administers, and scores exams used by states to license candidates as Licensed Master Social Workers and Licensed Clinical Social Workers. (*See* FAC ¶¶ 6, 47.) However, there are no allegations to demonstrate that ASWB procures employers or jobs for individuals taking the social work license exams. (*See generally* FAC.) Nor do Plaintiffs provide any caselaw to support an argument that an organization that manages test taking related to social work licensing can be categorized as an employment agency under Title VII. (*See* Pls.' Opp. 14.) Accordingly, the Court concludes that ASWB is not an employment agency. *See Bonaby*, 2003 WL 21649453, at *4 (holding that the New York City Taxi & Limousine Commission was not an employment agency because it did not "procure employers or jobs for its licensees"); *Nat'l Org. for Women, New York Chapter v. Waterfront Comm'n of New York Harbor*, 468 F. Supp. 317, 320 (S.D.N.Y. 1979) (holding that licensing commission was not an employment agency because it did not obtain workers for employers or jobs for workers).

Therefore, because ASWB is not an employer or employment agency within the definition of Title VII, it is not subject to suit under this statute. As such, Plaintiffs' Title VII claim is dismissed.

### 2. NYSHRL Claim

"Discrimination . . . claims brought under the NYSHRL are evaluated identically to claims brought under Title VII." *Maher v. All. Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 259 (E.D.N.Y. 2009) (citing *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997) (acknowledging that claims brought under the NYSHRL are analytically identical to claims brought under Title VII)); *see also Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008)

("We typically treat Title VII and NYHRL discrimination claims as analytically identical, applying the same standard of proof to both claims."), *as amended*, 514 F.3d 217 (2d Cir. 2008). As such, "[a]n employee relationship is also necessary to pursue discrimination claims under the NYSHRL." *Popat*, 2024 WL 3652947, at *10 (citing *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000)).

As discussed above, Plaintiffs have failed to plead an employment relationship with ASWB, under a direct employment, a third-party interference, or employment agency theory. *See supra* Section II.B.1. Accordingly, as with their Title VII claims, the Court dismisses Plaintiff's NYSHRL claims. *See Karupaiyan v. CVS Health Corp.*, No. 19-CV-8814, 2023 WL 5713714, at *17 (S.D.N.Y. Sept. 5, 2023) (dismissing plaintiff's Title VII and NYSHRL claims against those defendants for which plaintiff could not establish an employment relationship); *see also Harris*, 2013 WL 3487032, at *12 (dismissing plaintiff's Title VII and NYSHRL claim for failure to establish an employment relationship with defendants), *report and recommendation adopted as modified*, 2013 WL 5425336 (S.D.N.Y. 2013).[2]

---

[2] To the extent Plaintiffs attempt to assert an NYSHRL claim by contending, for the first time in their Opposition, that ASWB "aided and abetted" employment discrimination, (*see* Pls.' Opp. 14–17), the Court will not entertain such a claim at this stage. Plaintiffs made no such allegations in their FAC, notwithstanding plenty of time and opportunity to do so, and therefore the Court declines to consider such an argument. *See Vasquez v. N.Y.C. Dep't of Educ.*, No. 22-CV-3360, 2023 WL 2058773, at *4 (S.D.N.Y. Feb. 16, 2023) ("[I]t is well-settled that a plaintiff 'cannot amend her complaint by asserting new facts or theories for the first time in opposition to a motion to dismiss.'" (alterations adopted) (quoting *Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015)); *see also Wahatalo v. Begley*, No. 23-CV-658, 2024 WL 3028426, at *4 (D. Conn. June 17, 2024) (same).

Further, the Court emphasizes that to the extent that Plaintiffs seek to amend their pleadings for a second time, they should take note that before a defendant can be deemed and aider and abettor under the NYSHRL, "a plaintiff must first establish the existence of a primary violation of the NYSHRL by an employer or principal." *Griffin v. Sirva, Inc.*, 291 F. Supp. 3d 245, 254 (E.D.N.Y. 2018) (collecting cases); *see also Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 122 (S.D.N.Y. 2022) ("In order for a defendant to be liable as an aider and abettor

3.  Section 1981

"To state a [Section] 1981 claim, 'a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.).'" *Ahmad v. S.R.*, No. 18-CV-3416, 2018 WL 11472415, at *3 (S.D.N.Y. July 16, 2018) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)). The Supreme Court long ago made clear that Section 1981 "can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982). Moreover, the Supreme Court has recently emphasized, a Section 1981 plaintiff has the burden of showing, at every stage of the proceedings, that the plaintiff's race was a "but for" cause of any alleged injury. *Comcast Corp. v. Nat'l Assoc. of African American-Owned* Media, 589 U.S. 327, 333 (2020) ("[Section] 1981 follows the general rule. [A] plaintiff bears the burden of showing that race was a but-for cause of its injury[, a]nd . . . the burden itself remains

_____

under . . . the NYSHRL, a plaintiff must first establish the existence of a primary violation of the NYSHRL by an employer or principal"). Here Plaintiffs, even in their Opposition, offer no suggestion that there is evidence of discrimination by any putative employers. Indeed, one Plaintiff has not even sought employment opportunities that require a license, (*see* FAC ¶ 25), so the Court is at a loss to understand how there could be any principal liability in that circumstance. Without such a plausible claim, the aiding and abetting theory is a non-starter. *See Bueno v. Eurostars Hotel Co.*, No. 21-CV-535, 2022 WL 95026, at *11 (S.D.N.Y. Jan. 10, 2022) ("Without a predicate act of employment discrimination under the NYSHRL . . ., there can be no aiding-and-abetting claim."); *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 378 (S.D.N.Y. 2013) (noting that where a plaintiff "has not demonstrated a primary violation, there can be no liability for aiding and abetting"); *Benjamin v. Metro. Transp. Auth.*, No. 07-CV-3561, 2012 WL 3188764, at *20 (S.D.N.Y. Aug. 2, 2012) ("Because [the] [p]laintiff is not able to establish a primary violation [against his employer], [the] [i]ndividual [d]efendants . . . cannot be liable for aiding and abetting."); *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 363 (S.D.N.Y. 2007) ("[A]ccessory liability [under the NYSHRL] may only be found where a primary violation has been established.").

constant."); *see also id.* at 341 ("To prevail, a [Section 1981] plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."). It is not sufficient for a plaintiff merely to allege that race was a "motivating factor." *Id.* at 338 ("[N]owhere in its amendments to [Section] 1981 did Congress so much as whisper about motivating factors."); *id.* at 341 (holding that in its pleading a Section 1981 plaintiff must allege but-for causation).[3]

Here, Plaintiffs fail to plausibly plead the intentional discrimination necessary for a Section 1981 claim. Instead, Plaintiffs provide statistical data about the first-time pass rates of White, Black, and Hispanic test takers and the eventual pass rates of the same three demographic groups. (*See* FAC ¶¶ 40–43.) However, the Second Circuit has held that "to show discriminatory intent in a [Section] 1981 . . . case based on statistics alone, the statistics must not only be statistically significant in the mathematical sense, but they must also be of a level that makes other plausible non-discriminatory explanations very unlikely." *Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015). Plaintiffs' alleged data is a far cry from the kind of statistical evidence Courts in the Second Circuit require in connection with allegations of intentional discrimination to survive a motion to dismiss. *See id.* (holding that plaintiffs failed to adequately plead discriminatory intent based on statistics alone because "the statistics provided

---

[3] Remarkably, Plaintiffs ignore *Comcast* and claim that to survive this Motion, they need only "carry the minimum burden" of showing that Defendant was "motivated by discriminatory intent." (Pls.' Opp. 18 (citing *Richardson v. City of New York*, No. 17-CV-9447, 2018 WL 4682224, at *6 (S.D.N.Y. Sept. 28, 2018)).) In so doing, they rely on authority that has been made obsolete and rejected by *Comcast*. *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021) ("The Supreme Court has clarified recently that the but-for causation standard for discrimination claims applies not only at trial but at the pleading stage as well."); *Gentile v. Touro L. Ctr.*, No. 21-CV-1345, 2023 WL 2574441, at *5 (E.D.N.Y. Mar. 20, 2023) (The "but-for causation standard for discrimination claims applies not only at trial but at the pleading stage as well").

by plaintiffs show only the raw percentages of White, Black, and Hispanic individuals at each

employment level, without providing any detail as to the number of individuals at each level, the

qualifications of individuals in the applicant pool and of those hired for each position, or the

number of openings at each level"); *see also Cardwell v. Davis Polk & Wardwell LLP*, No. 19-

CV-10256, 2023 WL 2049800, at *24 (S.D.N.Y. Feb. 16, 2023) ("Broad statistical evidence,

without evidence of specific instances of discrimination, is not relevant to whether any specific

individual acted with discriminatory intent or whether any specific individual was the target of

discrimination." (alteration adopted) (quoting *Burgis*, 798 F.3d at 69 n.5)); *Rosario v. Town of

Mount Kisco*, No. 16-CV-8766, 2020 WL 764280, at *8 (S.D.N.Y. Feb. 14, 2020) (holding that

plaintiff's statistical data—namely, the disparity in percentage of enforcement prior to and post

the alleged discrimination triggering event—did not "rule out other plausible non-discriminatory

explanations" (internal quotation marks omitted)); *Raymond*, 317 F. Supp. 3d at 761–62 (holding

that the statistics proffered by Black and Latino city police officers, showing only raw

percentages of minority and white individuals in performance monitoring program, lacked

specificity, and thus were insufficient to show discriminatory intent in Section 1981; statistics

did not provide any basis for evaluation of circumstances or charges on which disciplinary

decisions were based). Put another way, Plaintiffs' data, at best, makes out a case of disparate

impact, but not disparate treatment. The former does not establish that Defendant's intent to

discriminate, let alone that Defendant's actions were the but-for cause of Plaintiffs' alleged

injuries. *See Manley v. Texas S. Univ.*, 107 F. Supp. 3d 712, 721 (S.D. Tex. 2015) (dismissing

Section 1981 claim based solely on disparate impact of LSAT test scores, because disparate

impact claims are "not actionable under [Section] 1981" (citing *Clyburn v. Shields*, 33 F. App'x

552, 555–56 (2d Cir. 2002) (summary order) (rejecting plaintiffs' race-based discrimination

challenges to the University of Buffalo School of Law's "reliance on the LSAT as an admissions criterion" because they did not adequately allege intentional discrimination as required by the Equal Protection Clause and 42 U.S.C. § 1981))).[4]

Furthermore, to the extent Plaintiffs argue that ASWB's discriminatory intent can be inferred from its decision to continue offering the exams despite its alleged knowledge of the disproportionate failure rates for minority groups, (*see* Pls' Opp. 18), such an argument does not save Plaintiffs' claim. Rather, it is well-settled in this Circuit that "[d]iscriminatory purpose implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker selected or reaffirmed a particular course of action at least in part because of not merely in spite of, its adverse effects upon an identifiable group." *Lewis v. Walsh*, No. 24-CV-98, 2024 WL 2835269, at *9 (N.D.N.Y. June 4, 2024) (alterations adopted) (internal quotation marks omitted) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 271–72 (1993)). In other words, in order to claim intentional discrimination a plaintiff must plead more than a defendant's mere awareness of adverse consequences for minority groups, *see Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 277 (S.D.N.Y. 2019) ("Having a discriminatory purpose implies more than simply having volition or being aware of

---

[4] The Court also notes that Plaintiffs' reliance on *United States v. City of New York*, 717 F.3d 72, 98 (2d Cir. 2013) to support its claim that statistics alone are enough to demonstrate intentional discrimination is inapposite. Specifically, *City of New York* predates the Supreme Court's decision in *Comcast* and the Second Circuit's decision in *Burgis*, both of which provided further specific controlling authority with respect to the pleading standards concerning intentional discrimination. As explained above, *Comcast* clarified that for Plaintiffs "[t]o prevail" on their Section 1981 claim, they "must initially plead and ultimately prove that, but for race, [they] would not have suffered the loss of a legally protected right." 589 U.S. at 341. Further, *Burgis* illustrated that to rely on statistics to plead intentional discrimination Plaintiffs would have to provide mathematically significant statistics at a level that makes other plausible non-discriminatory explanations very unlikely. 798 F.3d at 69. Plaintiffs have not done so here. As such, Plaintiffs' citation to *City of New York* is misleading, and ultimately, their allegations fall short of what this Court requires at the pleading stage for a Section 1981 claim.

the consequences of a[n] . . . action."), *aff'd*, 788 F. App'x 85 (2d Cir. 2019) (summary order), which Plaintiffs have not adequately done here.[5]  Because Plaintiffs have not provided sufficient allegations to support the contention that Defendant acted with the intent to discriminate, (*see generally* FAC), the Court concludes that Plaintiffs have failed to allege a  Section 1981 claim. Accordingly, Plaintiffs this claim is also dismissed.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is granted in full and the Court dismisses Plaintiffs' FAC.  The dismissal is without prejudice because this is the first adjudication on the merits of Plaintiffs claims.[6]  Should Plaintiffs choose to file an amended complaint, they must do so within thirty days of this Opinion, addressing the deficiencies identified herein.  The amended complaint will replace, not supplement, the FAC currently

---

[5] The Court notes that, in one sentence and without further explanation, Plaintiffs state that "ASWB consistently resisted disclosing the[] pass rates, suggesting a consciousness of guilt, which can be probative of unlawful intent." (Pls.' Opp. 18.)  However, the Court finds such an allegation to be unavailing.  Specifically, the only case Plaintiffs cite in support of such an argument is irrelevant to the Action at issue, as that case involved fraud claims and spoke to how the concealing of assets or income could be used to show consciousness of guilt and in turn used to establish intent to defraud.  *See State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-CV-9792, 2015 WL 7871037, at *4 (S.D.N.Y. Dec. 3, 2015).  As such, without more, at this stage, the Court is not convinced that Plaintiffs have adequately demonstrated intentional discrimination by Defendants.

[6] While Defendants contend that this case should be dismissed with prejudice and Plaintiffs should not have an opportunity to amend, (*see* Defs.' Mem. 15–16), Plaintiffs' Opposition papers suggest they might be able to cure the defects through one last amendment, (*see generally* Pls.' Opp.).  Accordingly, the Court will provide Plaintiffs one more chance to amend.  *See Gregory v. Inc. Vill. of Ctr. Island*, No. 14-CV-2889, 2015 WL 5093623, at *16 (E.D.N.Y. Aug. 28, 2015) ("[P]laintiff's claims have been dismissed based upon pleading defects, and it is possible that plaintiff may be able to cure these defects by amending his complaint to include additional facts.  Accordingly, the [c]ourt grants plaintiff leave to amend his complaint to address the pleading deficiencies identified by the [c]ourt . . . ."); *see also Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000) ("A district court has broad discretion in determining whether to grant leave to amend . . . .").

before the Court.  It therefore must contain *all* of the claims and factual allegations Plaintiffs wish the Court to consider.  If Plaintiffs fail to abide by the thirty-day deadline, the claims that are dismissed could be dismissed with prejudice.  The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 30).

SO ORDERED.

Dated:    September 25, 2024
            White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

17